Santiago TAPIA, Petitioner–Appellant,

v.

Robert TANSY, Respondent–Appellee.

No. 89–2209.

United States Court of Appeals,
Tenth Circuit.

March 5, 1991.

Tova Indritz, Federal Public Defender (Teresa E. Storch, Asst. Federal Public Defender, on the briefs), Albuquerque, N.M., for petitioner-appellant.

Anthony Tupler, Asst. Atty. Gen. (Hal Stratton, Atty. Gen., with him on the brief), Santa Fe, N.M., for respondent-appellee.

Before LOGAN, ANDERSON and EBEL, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

Santiago "Jimmy" Tapia ("Jimmy" or "Tapia") was convicted in New Mexico state court of second degree murder in the death of Jeffrey Stevers and aggravated battery of Sergio de la Rosa. After exhausting his appeals in state court with respect to issues raised here, Tapia filed for habeas relief in federal court pursuant to 28 U.S.C. § 2254, contending that: (1) the loss of the original preliminary hearing tapes violated his Sixth Amendment right to confrontation by depriving him of material information necessary to effectively cross-examine witnesses, and the court's failure to arraign him after the second preliminary hearing denied him due process; (2) the trial court's sealing of the police chief's affidavit denied Tapia his Sixth Amendment right to confront and cross-examine the witness against him; (3) the submission of a second degree murder instruction on an accessory theory denied him due process and a fair trial; (4) the admission of allegedly perjured testimony deprived him of due process and a fair trial; and, (5) ineffective assistance of counsel in

pursuing his direct appeal denied him his Sixth Amendment right to counsel.

Upon review of the briefs, the magistrate submitted his proposed findings on Tapia's contentions to the district court and recommended that Tapia's petition be dismissed with prejudice. The district court, after a *de novo* review, adopted the magistrate's findings and recommended disposition and, accordingly, dismissed the petition with prejudice. On appeal, Tapia reasserts his claims raised below. We affirm.[1]

## BACKGROUND

The key witnesses against Tapia were Sergio de la Rosa and Pam Carrillo. Both witnesses gave different accounts of the relevant evening's events to the police, at the two preliminary hearings, and at trial. However, the basic facts as presented at trial are as follows: A group of people were at Jeffrey Stevers's house the night of September 7, including Jeffrey Stevers, Robert and Pam Carrillo, Sergio de la Rosa, Boo Boo and Julio Visarraga, and Mike Lucero. Many had been drinking and sniffing paint. Jimmy and his brother, Eddie Tapia, came to the house later that evening. When Stevers left the house for a short time to buy some beer, Jimmy and de la Rosa began to fight. In the altercation, de la Rosa suffered a knife wound. Pam Carrillo testified that she saw both the Tapia brothers with a knife. She testified first that Jimmy alone stabbed de la Rosa, but she later stated that Eddie had also stabbed de la Rosa. De la Rosa testified that only Jimmy had stabbed him and that he never saw Eddie with a knife.

Upon Stevers's return, he and Jimmy went outside. Carrillo testified that the two went out alone and that Eddie Tapia remained inside. De la Rosa stated that when Stevers returned he told everyone to leave. De la Rosa was leaving through a bathroom window when he heard people talking outside the house and heard Jimmy say "dejame matarlo" (let me kill him).

When Stevers re-entered the house, he collapsed with a fatal stab wound.

On the first day of trial, de la Rosa testified that Detective Sergeant Ramiro Flores, the officer investigating the murder, promised to release him on other pending charges if he would testify (presumably against Jimmy) in court. He stated that Flores questioned him in the hospital, tape-recording only specific portions of de la Rosa's statements, and told de la Rosa to state that he heard Jimmy say "dejame matarlo." Flores allegedly also told de la Rosa that if he did not give a taped statement he would be charged with the murder. On the second day of trial, the prosecution recalled de la Rosa to the stand. De la Rosa recanted his original testimony and admitted to perjuring himself because of threats of harm to his family. He then denied that Flores selectively recorded his hospital statements and prompted his answers. He testified that he did actually hear Jimmy say "dejame matarlo." .

Carrillo testified that she accepted $40 from Flores the day after the preliminary hearing and that Flores told her he needed her testimony. Boo Boo Visarraga admitted to accepting $30 from Flores. His brother, Julio Visarraga, testified that Flores offered him money to lie and say that Jimmy was at Stevers's house that night. Julio rejected the offer. Although the amount is disputed, Flores admitted he gave money to Carrillo and Boo Boo, but claimed that he did so for humanitarian reasons.

Tapia went to trial under an amended criminal information charging him with second degree murder as a principal in violation of N.M.Stat.Ann. § 30-2-1(B) (1978), and with aggravated battery in violation of N.M.Stat.Ann. § 30-3-5(C) (1978). The jury found him guilty on both counts and he was sentenced to 13 years imprisonment.

 Our review of a petition for a writ of habeas corpus is confined to alleged denials of federal constitutional rights.

---

1. After oral argument, Tapia sent this court a notarized affidavit and a letter confessing that he killed Jeffrey Stevers. However, since the documents are outside the record, we have not relied on them in reaching our decision.

*Brinlee v. Crisp,* 608 F.2d 839, 843 (10th Cir.1979), *cert. denied,* 444 U.S. 1047, 100 S.Ct. 737, 62 L.Ed.2d 733 (1980). With respect to claims asserting a denial of due process, we will not question the evidentiary or procedural rulings of the state court unless Tapia can show that, because of the court's actions, his trial, as a whole, was rendered fundamentally unfair. *Nichols v. Sullivan,* 867 F.2d 1250, 1253 (10th Cir.), *cert. denied,* 490 U.S. 1112, 109 S.Ct. 3169, 104 L.Ed.2d 1031 (1989). With respect to Tapia's various Sixth Amendment claims, we review ultimate legal conclusions *de novo. Laycock v. State of New Mexico,* 880 F.2d 1184, 1187 (10th Cir.1989) (ineffective assistance of counsel); *Nichols v. Sullivan,* 867 F.2d at 1253 (citing *Taylor v. Lombard,* 606 F.2d 371, 375 (2d Cir.1979) (addresses alleged prosecutorial use of perjured testimony), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1346, 63 L.Ed.2d 781 (1980)); *Haggins v. Warden, Fort Pillow State Farm,* 715 F.2d 1050, 1055 (6th Cir.1983) (right to confrontation), *cert. denied,* 464 U.S. 1071, 104 S.Ct. 980, 79 L.Ed.2d 217 (1984); *see Browning v. Foltz,* 837 F.2d 276, 280–81 (6th Cir.1988) (notice of charges), *cert. denied,* 488 U.S. 1018, 109 S.Ct. 816, 102 L.Ed.2d 805 (1989). Underlying findings of fact are accorded a presumption of correctness. 28 U.S.C. § 2254(d); *Case v. Mondragon,* 887 F.2d 1388 (10th Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 1490, 108 L.Ed.2d 626 (1990).

## DISCUSSION

### I.

### LOSS OF PRELIMINARY HEARING TAPES

■ Through inadvertence, the original preliminary hearing tapes were lost and the district court held a second preliminary hearing. Tapia claims that, since he did not have access to the tapes of the first preliminary hearing, he was deprived of a source of material information necessary for effectively cross-examining and impeaching the testimony of de la Rosa, thus violating his Sixth Amendment right to confrontation. Because of that alleged violation, he contends that the trial court was required to dismiss the case against him. We disagree.

"The Confrontation Clause provides two types of protections for a criminal defendant: the right physically to face those who testify against him, and the right to conduct cross-examination." *Pennsylvania v. Ritchie,* 480 U.S. 39, 51, 107 S.Ct. 989, 998, 94 L.Ed.2d 40 (1987); *see also United States v. Lane,* 883 F.2d 1484, 1502 (10th Cir.1989) (citing *Davis v. Alaska,* 415 U.S. 308, 315–17, 94 S.Ct. 1105, 1109–1111, 39 L.Ed.2d 347 (1974)), *cert. denied,* — U.S. ——, 110 S.Ct. 872, 107 L.Ed.2d 956 (1990). However, "the Confrontation Clause only guarantees 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Pennsylvania v. Ritchie,* 480 U.S. at 53, 107 S.Ct. at 999 (quoting *Delaware v. Fensterer,* 474 U.S. 15, 20, 106 S.Ct. 292, 294–95, 88 L.Ed.2d 15 (1985) (per curiam)) (emphasis omitted). A defendant has engaged in effective cross-examination if "the jury had sufficient information to make a discriminating appraisal" of the relevant issue. *United States v. Larranaga,* 787 F.2d 489, 498 (10th Cir.1986) (quoting *United States v. Swingler,* 758 F.2d 477, 498 (10th Cir.1985)).

Defense counsel extensively examined de la Rosa and thoroughly impeached him with his many prior inconsistent statements, some of which were made during trial before the jury. The trial court did not restrict Tapia's cross-examination of de la Rosa in any way. Tapia's questioning was limited only by the unavailability of the information contained in the preliminary hearing tapes. It is wholly speculative whether the missing tapes would have provided more material for impeachment, but even if they had, additional impeachment would merely have been cumulative. The jury had sufficient information to determine de la Rosa's credibility.

The situation is not unlike that in *Pennsylvania v. Ritchie,* 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). In that case, the defendant argued that he could not effec-

tively question his daughter, the victim of his alleged sexual assaults, without access to the records of the Children and Youth Services ("CYS"). Under Pennsylvania law, information obtained in the course of a CYS investigation is confidential. Like Tapia in this case, Ritchie argued that, had the files been disclosed, he would have been able to impeach his daughter with her prior inconsistent statements. The Supreme Court held that withholding the CYS file did not violate the Confrontation Clause. "[I]t only would have been impermissible for the judge to have prevented Ritchie's lawyer from cross-examining the daughter." 480 U.S. at 54, 107 S.Ct. at 1000. The same rule applies here. We hold that de la Rosa's availability for unlimited cross-examination satisfies Tapia's Sixth Amendment Confrontation rights.

■ Tapia also argues that, since he was not arraigned in open court after the information against him was filed pursuant to S.C.R.A. 5–303, he was denied due process. Since he has shown no resulting prejudice, we find no violation. *United States v. Coffman,* 567 F.2d 960, 961 (10th Cir.1977) (when no demonstration of prejudice, failure to arraign is not error).

## II.

### SEALING OF POLICE CHIEF'S AFFIDAVIT

On cross-examination, defense counsel asked Sergeant Flores whether he had made any "requests for money from the police contingency funds concerning [the Stevers] case." Appellant's Brief at 16. The officer answered that he had not. In order to impeach that testimony, Tapia

sought the police contingency fund records. The court directed police chief Ray Sisneros to prepare an affidavit concerning the fund's records. The affidavit was submitted and reviewed in camera. The court then answered questions regarding the information contained in the affidavit,[2] determined that nothing in the affidavit contradicted Flores's testimony and then, over defense objection, ordered the affidavit sealed. During a later post-conviction proceeding, the sealed affidavit was redacted in part by the appellate court, and provided to appellate counsel. The affidavit stated, in part:

> I have reviewed the detective division's contingency fund file and on September 10, 1985, Sgt. Ramiro Flores obtained $100 to be used in the Stevers homicide case.

■ Tapia argues that exposure of Flores's alleged willingness to lie under oath about using police funds in the Stevers case was critical to prove that he would also engage in other unethical acts, in particular, telling de la Rosa to testify that he heard Tapia say "dejame matarlo." He contends that such impeachment was crucial to undermining Flores's credibility and in defusing the "reasonable inference" from his testimony that, since he gave money to the witnesses for humanitarian reasons, he was an exemplary police officer who would never engage in any misconduct. Tapia claims that the trial court's sealing of the affidavit precluded him from access to this important impeachment material and thereby deprived him of his Sixth Amendment right to confront and cross-ex-

---

2. Court: If I remember correctly, I did ask Chief Sisneros to check the records and if he determined that Sgt. Flores did not use contingency funds fees with respect to any witness in this case, he was to prepare an affidavit notifying me of that fact. He has prepared a sworn affidavit whereby he indicates that no contingency fund fees were paid by Mr. Flores, to any witness in this case and that is dispositive in this matter. I will go ahead and take the D.A.'s request to seal the affidavit.

State: Your Honor, one additional question, is there any indication in that affidavit whether anyone in the Santa Fe Police Department

used any contingency fee monies to be paid to any of the witnesses in this case?
Court: No.
Defendant: Are you talking about just the witnesses in this case that have the top headline "The Tapia Case" or talking about any contingency funds paid to any witnesses in this case?
Court: To any witnesses.
Defendant: For anything?
Court: Yes.
Defendant: And they claim no?
Court: That is correct.
R. Tape No. 26, at counter 247.

amine the witnesses against him.[3] We disagree.

As previously indicated, the Confrontation Clause ensures the defendant the opportunity to engage in "effective cross-examination" of the witnesses against him, *Pennsylvania v. Ritchie*, 480 U.S. at 53, 107 S.Ct. at 999, but it does not include "the power to require the ... disclosure of any and all information that might be useful in contradicting unfavorable testimony." *Id.* at 51, 107 S.Ct. at 998. Effective cross-examination only requires that the trial judge not limit the scope of cross-examination so much that it prevents the jury from having sufficient information to make a "discriminating appraisal" of the relevant issue. *United States v. Larranaga*, 787 F.2d 489, 498 (10th Cir.1986); *see United States v. Lane*, 883 F.2d 1484, 1502 (10th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 872, 107 L.Ed.2d 956 (1990); *United States v. Atwell*, 766 F.2d 416, 419–20 (10th Cir.) (trial judge has discretion to limit the scope of cross-examination as long as basic right to confrontation is protected), *cert. denied*, 474 U.S. 921, 106 S.Ct. 251, 88 L.Ed.2d 259 (1985); *United States v. Valentine*, 706 F.2d 282, 288 (10th Cir.1983).

In this case, the judge did not limit the scope of Tapia's cross-examination of Flores. The judge merely ruled on the probative and impeachment value of the contents of the affidavit, disclosed all requested information to the defendant and then sealed the record. Tapia was free to question Flores regarding the use of contingency fund money in the case and to discredit Flores's testimony fully with the

conflicting testimony of the other witnesses, and he did so.

De la Rosa testified that Flores had doctored his recorded testimony in the hospital and that he had been threatened with an indictment himself if he did not cooperate. Carrillo claimed that Flores told her he needed her testimony, that she received $40 from Flores after she testified at the preliminary hearing and that he gave $10 to her boyfriend. Boo Boo Visarraga testified that Flores told him to lie and that Flores gave him $20 at the police station after being interviewed about the stabbings. Flores also allegedly gave him $10 on another occasion. Julio Visarraga stated at trial that Flores had offered him $20 to say that Jimmy was at Stevers's house the evening of the stabbing. Julio refused to give a statement at that time and did not take the money. Flores admitted to giving money to the witnesses, but claimed that he only gave Boo Boo $10 at the station. He also stated that he gave the money to the witnesses for humanitarian reasons. This evidence was clearly sufficient for the jury to adequately appraise Flores's credibility, even without the additional, cumulative impeachment concerning the use of police contingency fund money.[4]

Tapia attempts to distinguish this case from *Pennsylvania v. Ritchie* by emphasizing that, unlike Ritchie, he did not seek the affidavit as pretrial discovery. He then tries to analogize his case to the facts and issues in *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).[5] We are not convinced. The Supreme Court explained *Davis* in *Ritchie*. The Court stated

3. Tapia also urges us to independently review, as a mixed question of law and fact, the trial court's determination that the affidavit did not bear on Flores's credibility. However, as discussed above, we will not review the correctness of a trial court's evidentiary ruling absent a showing of a constitutional violation. Since Tapia has not shown that the sealing of the affidavit rendered his trial constitutionally infirm, we will not review the correctness of the court's decision.

4. Tapia himself admits that a reasonable inference could be drawn from the evidence presented that de la Rosa and Carrillo were afraid of Flores and were willing to cooperate with him

at any cost and that Flores gave money to the witnesses to reward correct answers. Appellant's Brief at 40–41. In addition, Tapia states that the jury could reasonably infer that Flores threatened or bribed the witnesses. Appellant's Brief at 40–41.

5. In *Davis,* the trial court issued a protective order prohibiting defense counsel from questioning a key prosecution witness concerning his juvenile criminal record and his probation status. The Supreme Court held that the trial court denied the defendant his right to confrontation by limiting the cross-examination and precluding him from showing the witness's possible bias.

that the withholding of the information in *Davis* did not render the defendant's trial unconstitutional. It was the trial judge's direct limitation on questioning about that information that violated the Confrontation Clause. *Pennsylvania v. Ritchie*, 480 U.S. at 54, 107 S.Ct. at 999–1000. *Davis* dealt with a judicial limitation on *questioning* a witness whereas *Ritchie* dealt with the issue of *access* to information to aid in cross-examination. In this case, Tapia was not prevented from questioning Flores about the contingency fund money. Instead, he "complains of ... the failure of the trial court to allow him access to that affidavit." Appellant's Brief at 39. As a question of a right of access, under *Ritchie*, the sealing of the affidavit did not violate Tapia's confrontation rights.

## III.

## SECOND DEGREE MURDER INSTRUCTION ON AIDING AND ABETTING

In an information filed October 10, 1985, the prosecution originally charged both Eddie and Jimmy Tapia with first degree murder, also alleging accessory liability in violation of § 30-1-13, N.M.Stat.Ann. (1984).[6] R.Vol. II at 1. On February 25, 1986, the State filed a Nolle Prosequi and dismissed the charges against Eddie Tapia without prejudice. R.Vol. II at 133. On the same day, an amended information was filed, charging Jimmy Tapia with second degree murder as a principal in violation of N.M. Stat.Ann. § 30-2-1(B) (1978).[7] R.Vol. II at 134–35. The court instructed the jury on accessory liability in Instruction No. 15 as follows:

> The defendant may be found guilty of a second degree murder even though he himself did not do the acts constituting the crime, if the State proves to your satisfaction beyond a reasonable doubt that:
>
> 1. The defendant intended that the crime be committed.
>
> 2. The crime was committed.
>
> 3. The defendant helped, encouraged or caused the crime to be committed.

R.Vol. II at 184.

The jury subsequently found Tapia guilty of murder in the second degree with a special finding stating, "We the jury found the defendant guilty of murder in the second degree within the context of Instruction #15." R.Vol. II at 184.

Tapia argues that the submission of Instruction No. 15 to the jury violated his due process right to a fair trial in two ways: (1) he lacked notice of the accessory charge because the second information did not include that charge; and, (2) there was insufficient evidence to establish the requisite accessory element of community of purpose.[8] We disagree.

*Notice*

■ The "sufficiency of an indictment or information is primarily a question of state law." *Franklin v. White*, 803 F.2d 416, 418 (8th Cir.1986) (quoting *Goodloe v. Parratt*, 605 F.2d 1041, 1045 n. 12 (8th Cir. 1979)), *cert. denied*, 481 U.S. 1020, 107 S.Ct. 1904, 95 L.Ed.2d 510 (1987). Under

---

6. A person may be charged with and convicted of the crime as an accessory if he procures, counsels, aids or abets in its commission and although he did not directly commit the crime and although the principal who directly committed such crime has not been prosecuted or convicted, or has been convicted of a different crime or degree of crime, or has been acquitted, or is a child under the Children's Code. N.M.Stat.Ann. § 30-1-13 (1984) (previously N.M.Stat.Ann. § 40A-1-14 (1953)).

7. Unless he is acting upon sufficient provocation, upon a sudden quarrel or in the heat of passion, a person who kills another human being without lawful justification or excuse commits murder in the second degree if in performing the acts which cause the death he knows that such acts create a strong probability of death or great bodily harm to that individual or another.
N.M.Stat.Ann. § 30-2-1(B).

8. At the instruction conference, Tapia's counsel apparently objected only to the sufficiency of the evidence to support the accessory charge and argued that the instruction would confuse the jury. He did not claim that he lacked notice because of the prosecution's imposition of a new offense not charged in the information. However, he raised it on appeal and it was addressed on the merits. Therefore, we will consider his contention on this appeal from denial of habeas.

New Mexico law, Tapia had sufficient notice to be convicted on the accessory theory, even though the information did not charge him as an accessory.

New Mexico, like many other states, long ago abolished the distinction between conviction as a principal and an accessory, so that the charge as principal includes a corresponding accessory charge.[9] *State v. Wall*, 94 N.M. 169, 171, 608 P.2d 145, 147 (1980); *State v. Nance*, 77 N.M. 39, 43–44, 419 P.2d 242, 246–47 (1966); *State v. Ochoa*, 41 N.M. 589, 72 P.2d 609 (1937). Given the clarity of the New Mexico case law on this issue, "[the defendant] was on notice that he could be charged as a principal and convicted as an accessory or vice-a-versa." *State v. Wall*, 94 N.M. at 171–72, 608 P.2d at 147–48; *State v. Nance*, 77 N.M. at 44, 419 P.2d at 247 (holding that everyone concerned with the offense may be indicted as a principal by reading § 30-1-13 as though the words "as an accomplice" were omitted); *State v. Roque*, 91 N.M. 7, 8–9, 569 P.2d 417, 418–19 (Ct. App.) (an indictment need only allege the offense, not necessarily charge defendant as accessory), *cert. denied*, 91 N.M. 4, 569 P.2d 414 (1977); *see State v. McCall*, 101 N.M. 616, 626, 686 P.2d 958, 968 (Ct.App. 1983) (conviction of fraud on an accessory theory would not have been improper).

Furthermore, we agree with the magistrate and the district court that trial counsel's failure to argue lack of notice or to request a continuance to meet the allegedly new theory of liability at the time of the instruction's submission suggests that he

was not surprised by the instruction nor did he consider his defense to be substantially disadvantaged by its submission. R.Vol. I, Doc. 38, at 5.[10]

Tapia also argues that the fact that the district attorney only charged him as a principal in the second indictment leads to a reasonable inference that there was no probable cause to believe that he had committed the crime as an accessory. Tapia asserts that he relied on this disavowal of accomplice liability as he prepared for trial. However, as discussed above, the prosecution did not disavow Tapia's involvement as an accomplice. Rather, the charge as principal included the accomplice charge.

We, therefore, find that Tapia had sufficient notice of the accessory charge when charged as a principal.

*Sufficiency of the evidence*

Tapia contends that even if he had notice, the evidence on community of purpose necessary to convict him on accessory liability was so deficient as to amount to a constitutional violation.[11] He claims that the chief evidence supporting the accessory verdict was Eddie Visarraga's taped statement to Sergeant Flores, played in court to impeach Visarraga's trial testimony. In the tape, Visarraga stated that both Jimmy and Eddie Tapia went outside with Stevers. He stated that he heard the three scuffling and then Stevers came back into the house, fatally wounded. The Tapias ran off. Tapia argues that Visarraga's testimony should be disregarded as inherently incredible.[12] He contends that without this testi-

9. While the statute explicitly stating that accomplices may be informed against as principals, N.M.Stat.Ann. § 41-6-34 (1953), was repealed by Supreme Court Order of May 3, 1972, the New Mexico courts have continued to hold that the legislature intended to abolish the distinction between principals and accessories under N.M.Stat.Ann. § 30-1-13. *State v. Wall*, 94 N.M. at 171, 608 P.2d at 147; *State v. McCall*, 101 N.M. 616, 626, 686 P.2d 958, 968 (Ct.App. 1983); *State v. Martinez*, 85 N.M. 198, 199–200, 510 P.2d 916, 917–18 (Ct.App.1973); *State v. Roque*, 91 N.M. 7, 9, 569 P.2d 417, 419 (Ct.App.), *cert. denied*, 91 N.M. 4, 569 P.2d 414 (1977). We are bound by the interpretation of state law by the New Mexico courts since it does not conflict with the fundamental rights of justice and liber-

ty. *Chavez v. Baker*, 399 F.2d 943, 943 (10th Cir.1968).

10. As previously indicated, these contentions were considered on the merits by the state appellate court; therefore, no issue of procedural bar is presented.

11. Tapia does not contest the sufficiency of the evidence to support any other element of the accessory charge.

12. Under New Mexico rules of evidence, a witness's prior inconsistent statements are admissible as substantive evidence. N.M.R.Evid. § 11-801(D)(1)(a) (1978); *State v. Maestas*, 92 N.M. 135, 584 P.2d 182, 191 (Ct.App.1978). Tapia contends that the state court should have

mony, there was insufficient evidence to convict him. We disagree.

■ Sufficiency of the evidence for constitutional purposes is ultimately a question of law. *Beachum v. Tansy*, 903 F.2d 1321, 1325 (10th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 269, 112 L.Ed.2d 225 (1990); *Smith v. Atkins*, 678 F.2d 883, 885 (10th Cir.1982). As such, we review a habeas challenge of sufficiency to determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Cordoba v. Hanrahan*, 910 F.2d 691, 694 (10th Cir.) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, *reh'g denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979)) (emphasis in original), *cert. denied,* — U.S. —, 111 S.Ct. 585, 112 L.Ed.2d 590 (1990); *Beachum v. Tansy*, 903 F.2d at 1332. However, we do not sit as a new trier of fact. We presume that the jury's findings in evaluating the credibility of each witness are correct. *Case v. Mondragon*, 887 F.2d 1388, 1393 (10th Cir. 1989), *cert. denied,* — U.S. —, 110 S.Ct. 1490, 108 L.Ed.2d 626 (1990). We may disregard testimony on review only if we find that the witness is inherently incredible. *Wilcox v. Ford*, 813 F.2d 1140, 1146 (11th Cir.), *cert. denied*, 484 U.S. 925, 108 S.Ct. 287, 98 L.Ed.2d 247 (1987).

Testimony, to be considered incredible, "must be unbelievable on its face, i.e., testimony as to facts that [the witness] physically could not have possibly observed or events that could not have occurred under the laws of nature." *United States v. Garner*, 581 F.2d 481, 485 (5th Cir.1978); *United States v. Rivera*, 775 F.2d 1559, 1561 (11th Cir.1985), *cert. denied*, 475 U.S. 1051, 106 S.Ct. 1275, 89 L.Ed.2d 582 (1986); *Wilcox v. Ford*, 813 F.2d at 1146 (the testimony must be so "at odds with ordinary common sense or physically impossible under the laws of nature" that no reasonable person would believe it beyond a reasonable doubt). Confused, self-contradicting testimony by a drug addict does not make the witness's testimony inherently incredible. *Wilcox v. Ford*, 813 F.2d at 1146; *United States v. Garner*, 581 F.2d at 485; *see also United States v. Martinez*, 877 F.2d 1480, 1482 (10th Cir.1989) (impeachment of witness as a drug addict or as possessing emotional problems is a question of credibility for the jury). Nor does the fact that there are several conflicting versions regarding the events of the evening of September 7 affect our determination of credibility as a matter of law. Such inconsistencies are matters within the province of the jury. *United States v. Espinosa*, 771 F.2d 1382, 1391 (10th Cir.1985).

■ It is undisputed that Visarraga was present at Stevers's house the night of the murder. He could easily have heard the alleged scuffling between Stevers, Jimmy and Eddie outside before Stevers reentered the house, fatally wounded. Therefore, his testimony was not inherently incredible and the jury could have rationally relied on this evidence that both Eddie and Jimmy Tapia were involved in stabbing Stevers.

Relying on Visarraga's testimony, the jury could have reasonably believed that Eddie killed Stevers. "[C]ommunity of purpose may be shown by evidence of ... words ... or any means sufficient to incite, encourage, or instigate commission of the offense." *State v. Luna*, 92 N.M. 680, 683, 594 P.2d 340, 343 (Ct.App.1979). Tapia's exclamation of "dejame matarlo," as testified to by de la Rosa, showed that he had the intent to kill Stevers and that he encouraged such action or sought to do it himself. Such involvement is sufficient to show community of purpose and sustain a conviction of aiding and abetting.[13]

---

followed the more restrictive federal hearsay rule, which admits only a witness's prior inconsistent statements given under oath. Fed.R. Evid. 801(d)(1). However, since New Mexico's rule does not implicate Tapia's constitutional right to a fair trial, we defer to the state court's evidentiary ruling regarding Visarraga's testimo-

ny. *Nichols v. Sullivan*, 867 F.2d 1250, 1253 (10th Cir.), *cert. denied*, 490 U.S. 1112, 109 S.Ct. 3169, 104 L.Ed.2d 1031 (1989).

**13.** Tapia argues that the prosecution's belief that no reasonable person would believe that Eddie Tapia aided the defendant, Jimmy Tapia, in the

Eddie Visarraga heard the scuffling between Eddie, Jimmy and Stevers and de la Rosa heard Jimmy Tapia say "dejame matarlo." Together, these two witnesses gave consistent, albeit circumstantial, evidence that Tapia aided and abetted in the murder of Stevers. Circumstantial evidence is sufficient to convict. *United States v. Hooks*, 780 F.2d 1526, 1529 (10th Cir.), *cert. denied*, 475 U.S. 1128, 106 S.Ct. 1657, 90 L.Ed.2d 199 (1986). Thus, viewing all the evidence in the light most favorable to the government, there was sufficient evidence with respect to the conviction of aiding and abetting to satisfy constitutional requirements.

Since we find that Tapia had adequate notice of accessory liability and that there was sufficient evidence to convict on that charge, the jury instruction on aiding and abetting was not constitutionally defective.

Contradictions and changes in a witness's testimony alone do not constitute perjury and do not create an inference, let alone prove, that the prosecution knowingly presented perjured testimony. *United States ex rel. Burnett v. Illinois*, 619 F.2d 668, 674 (7th Cir.), *cert. denied*, 449 U.S. 880, 101 S.Ct. 229, 66 L.Ed.2d 104 (1980); *United States v. Holladay*, 566 F.2d 1018, 1019 (5th Cir.) ("Presentation of a witness who recants or contradicts his prior testimony is not to be confused with eliciting perjury."), *reh'g denied*, 573 F.2d 1309 (5th Cir.), *cert. denied*, 439 U.S. 831, 99 S.Ct. 108, 58 L.Ed.2d 125 (1978). Although de la Rosa and Carrillo changed their story several times, the jury heard all versions and both witnesses were thoroughly impeached.[15] It was for the jury to decide which version to believe. *Id.; see United States v. Cueto*, 628 F.2d 1273 (10th Cir. 1980).

## IV.

### ADMISSION OF ALLEGEDLY PERJURED TESTIMONY

Tapia contends that the prosecution's use of perjured testimony deprived him of due process.[14] He argues that the trial court should have acquitted him on that ground. We disagree. Tapia's argument centers around the inconsistent testimonies of Carrillo and de la Rosa to infer both perjury and the prosecution's knowing presentation of the false testimony.

## V.

### INEFFECTIVE ASSISTANCE OF COUNSEL

Every convicted person has a constitutional right to effective assistance of counsel for his first appeal of right. *Evitts v. Lucey*, 469 U.S. 387, 393–94, 105 S.Ct. 830, 834–35, 83 L.Ed.2d 821, *reh'g denied*, 470 U.S. 1065, 105 S.Ct. 1783, 84 L.Ed.2d 841 (1985). Tapia claims that he was denied this right when his appellate counsel declined to raise or brief the issues discussed above concerning the lost prelimi-

---

murder legally and ethically prevents them from trying to prove that Jimmy aided Eddie with the same evidence. However, this overlooks the fact that there was no testimony indicating that, if Jimmy had actually killed Stevers, Eddie, though perhaps present, had the requisite intent to harm Stevers or that he acted to encourage or further the crime. On the other hand, de la Rosa testified that he heard Jimmy yell "dejame matarlo." If the jury believed that Eddie had killed Stevers, Jimmy, at that moment, joined the partnership by encouraging the murder of Stevers.

14. When Tapia brought this claim in a motion for directed verdict, he alleged only that the witnesses lied, not that the prosecutor was responsible. However, he raised the issue of prosecutorial misconduct on direct appeal. Since

the state court considered the issue on its merits, we will review defendant's claim of the prosecutor's knowing use of perjured testimony on this appeal.

15. Tapia argues that the prosecution should not be allowed to put de la Rosa on the stand twice to testify as to two entirely different versions of the same event, knowing that one is a lie. However, Tapia has not shown that the government knew that de la Rosa would perjure himself on either occasion. If the prosecution discovered that de la Rosa's testimony on the first day was untrue, then in the interests of justice they should be allowed to reopen direct and present truthful testimony. In fact, a prosecutor is required to correct false testimony. *Napue v. Illinois*, 360 U.S. 264, 270, 79 S.Ct. 1173, 1177–78, 3 L.Ed.2d 1217 (1959).

nary hearing tapes and the use of perjured testimony, when his counsel misstated trial facts and when his counsel inadequately researched the law in support of his appeal. We disagree.

The two-part test set forth by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, *reh'g denied,* 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984), most recently construed by this court in *United States v. Rivera,* 900 F.2d 1462, 1472 (10th Cir.1990), states that the appellant must show *both* that his attorney's performance fell below an objective standard of reasonableness and that, but for the counsel's inadequacies, the result of the proceedings would have been different. Tapia has failed to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington,* 466 U.S. at 689, 104 S.Ct. at 2065.

■ A defendant does not have a "constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment decides not to present those points.... Legal contentions, like the currency, depreciate through overissue." *Jones v. Barnes,* 463 U.S. 745, 751–52, 103 S.Ct. 3308, 3312–13, 77 L.Ed.2d 987 (1983), *cited with approval in Evitts v. Lucey,* 469 U.S. at 394, 105 S.Ct. at 834–35. "Winnowing out weaker arguments" is not a constitutionally deficient practice and, indeed, is the hallmark of effective advocacy. *Smith v. Murray,* 477 U.S. 527, 536, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434 (1986) (quoting *Jones v. Barnes,* 463 U.S. at 752, 103 S.Ct. at 3313). Counsel's decision not to present those issues on appeal did not deny Tapia the effective assistance of counsel.

Tapia's only example of misstated trial fact is the insignificant fact of who requested the second preliminary hearing and is insufficient to show deficient representation. Tapia's claim of inadequate research is equally without support.

## VI.

## CONCLUSION

We find no constitutional deficiency in the state court proceedings or reversible error in the proceedings below. Accordingly, for the reasons stated herein, the judgment of the district court is AFFIRMED.