61 F.3d 916
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Bryan R. RAMER, Petitioner-Appellant,
v.
John THOMAS, Warden; Attorney General of the State of New
Mexico, Respondents-Appellees.
 No. 94-2214.
 United States Court of Appeals, Tenth Circuit.
 July 13, 1995.
 
 D. N.M., D. C. No. CIV-91-351-JC.
 
 
 1
 Petition Denied.
 
 
 2
 Before ANDERSON, BALDOCK and BRORBY, Circuit Judges.
 
 
 3
 ORDER AND JUDGMENT*
 
 
 4
 BRORBY, Circuit Judge.
 
 
 5
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The cause is therefore ordered submitted without oral argument.
 
 
 6
 The petitioner, Bryan R. Ramer, appearing pro se, appeals the district court's order denying his petition for a writ of habeas corpus. As grounds for relief, Mr. Ramer raises three issues that were presented to the district court: ineffective assistance of trial counsel; involuntariness of his guilty plea; and illegality of his plea bargain. Having examined the record on appeal and reviewed, de novo, the legal conclusions of the district court, we affirm the order of the district court for substantially the same reasons as those relied on by that court in reaching its decision.[1]
 
 
 7
 Mr. Ramer raises two additional issues on appeal. First, he argues he was "denied his right to appeal by the state court." The record before us, however, fails to reflect that this issue was raised in the trial court. Furthermore, with this allegation Mr. Ramer has failed to assert a federal constitutional claim cognizable in this federal habeas corpus proceeding. See Steele v. Young, 11 F.3d 1518, 1524 (10th Cir. 1993). As such, this contention provides no grounds for relief.
 
 
 8
 Second, Mr. Ramer argues he was denied due process of law insofar as the magistrate judge denied him certain discovery requests. These denials rendered him unable to prove he was tortured in jail and thus rendered him unable to prove his guilty plea was involuntarily entered into as a result of that torture.
 
 
 9
 The magistrate judge concluded Mr. Ramer's plea was voluntary based upon the in-court representations of Mr. Ramer, the favorable nature of his plea agreement, and the performance of Mr. Ramer's counsel. Based on these, as well as other facts, including Mr. Ramer's inability to offer anything other than conclusory and wholly unsupported allegations of abuse, the district court rejected the contention his plea was involuntary and denied further discovery. The court noted, however, that Mr. Ramer was afforded the opportunity to elicit testimony from a number witnesses who were present in court and who could have corroborated Mr. Ramer's allegations if they were true. Mr. Ramer declined to do so, however.
 
 
 10
 [T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.
 
 
 11
 Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Here, not only are Mr. Ramer's allegations conclusory and unsupported by specifics, the magistrate judge specifically found them to be unbelievable in the face of the record. As such, Mr. Ramer's claim was ripe for summary dismissal. It follows logically from this fact, therefore, that Mr. Ramer could not have been denied due process because the hearing he was afforded was narrower than he had hoped.
 
 
 12
 For the foregoing reasons, the order of the district court is AFFIRMED.
 
 ATTACHMENT
 EXHIBIT B
 IN THE UNITED STATES DISTRICT COURT
 FOR THE DISTRICT OF NEW MEXICO
 
 13
 Bryan R. Ramer, Petitioner,
 
 
 14
 vs.
 
 
 15
 John Thomas, Warden, Respondent.
 
 Civil No. 91-351 JC/DJS
 July 19, 1994
 ORDER
 
 16
 CONWAY, Chief Judge.
 
 
 17
 THIS MATTER having come before the Court on the proposed findings and recommended disposition of the United States Magistrate Judge, and objections to the proposed findings and recommended disposition having been filed, and the Court having made a de novo determination of those portions of the Magistrate Judge's proposed findings and recommended disposition objected to;
 
 
 18
 IT IS HEREBY ORDERED that the proposed findings and recommended disposition of the United States Magistrate Judge are adopted by the Court;
 
 
 19
 IT IS FURTHER ORDERED that the Petition and this action be, and they hereby are, dismissed with prejudice.
 
 EXHIBIT A
 IN THE UNITED STATES DISTRICT COURT
 FOR THE DISTRICT OF NEW MEXICO
 
 20
 Bryan R. Ramer, Petitioner,
 
 
 21
 vs.
 
 
 22
 John Thomas, Warden, Respondent.
 
 Civil No. 91-351 JC/DJS
 April 25, 1994
 
 23
 MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED
 
 DISPOSITION[1]
 
 24
 SVET, United States Magistrate Judge.
 
 
 25
 1. This a proceeding on a petition for a writ of habeas corpus pursuant to 28 U.S.C. Sec. 2254. Petitioner is currently incarcerated in Oklahoma. Petitioner challenges the judgment and sentence of the Seventh Judicial District Court entered in State v. Ramer CR 84-02 and CR 84-12 (Torrance County, New Mexico). Exhibits D and E, Evidentiary Hearing, November 19, 1993. Petitioner pleaded guilty to two counts of assault with intent to commit a violent felony upon a peace officer, two counts of aggravated battery upon a peace officer, one count of assault and one count of escape from jail. Pursuant to those pleas, Plaintiff was sentenced to a term of eighteen years in prison.
 
 
 26
 2. As a preliminary matter, 28 U.S.C. Sec. 2254 (b) and (c) require that a state prisoner seeking relief must exhaust state remedies before seeking to obtain relief in a federal habeas proceeding. See generally, Rose v. Lundy, 455 U.S. 509 (1982). Petitioner alleges and respondent concedes that Petitioner has exhausted his state remedies. After a review of the record this Court finds that Petitioner has exhausted his state remedies on the claims made in the instant petitioner.
 
 
 27
 3. As required by 28 U.S.C. Sec.2254(d), this Court must afford the presumption of correctness to findings of fact made by a state trial court, unless one of the eight factors enumerated in Sec.2254(d) applies or the Court concludes that the findings are not supported by the record.[2]
 
 
 28
 4. I find that none of the factors enumerated in 28 U.S.C. Sec.2254(d) apply and that the state court findings are supported by the record below. This Court has had access to and reviewed all of the proceedings below, which review forms the basis for the findings enumerated herein. This proceeding is unique in that another United States Magistrate, without benefit of the record proper, ordered an evidentiary hearing. That hearing, held on November 19, 1993, was a mirror image of the habeas corpus proceeding in state court and thus supports this Court's finding that the proceedings below were sufficient to withstand the challenge brought in this action.
 
 
 29
 5. Petitioner in this cause recites as grounds for relief the following:
 
 
 30
 A. Ineffective assistance of counsel;
 
 B. Involuntary guilty plea; and
 
 31
 C. Illegal plea bargain.
 
 
 32
 6. The background of this matter is as follows: In November, 1983, Petitioner was serving a twenty-five year sentence in the Oklahoma State Prison. (Record Proper, Tape 2, 2/28/84). In the course of incarceration, Petitioner had become eligible for participation in a work release program, from which he escaped. (Record Proper, Tape 3, 2/29/84). At the State Court habeas corpus proceeding, Petitioner testified that he escaped because he had married contrary to prison rules and his parole would therefor be denied. (Record Proper, Tape 3, 2/29/84). This is in contrast with Petitioner's testimony before this Court on November 19, 1993. In that proceeding, Petitioner testified that his escape was forced by the threat of death from fellow inmates. (Transcript of Proceedings, November 19, 1993, Testimony of Bryan Ramer, pages 108-110). Plaintiff fled Oklahoma, en route to California. While in New Mexico, Plaintiff's motorcycle was stopped by law enforcement officers. (Transcript of Proceedings, November 19, 1993, Testimony of Bryan Ramer, page 111). Upon being approached, Petitioner produced a .357 Magnum revolver and fired, striking both officers. (Transcript of Proceedings, November 19, 1993, Testimony of Bryan Ramer, page 125-125, 128). It is not disputed that this attack was unprovoked. (Record Proper, Tape 5, Transcript of Proceedings, November 19, 1993, Testimony of Bryan Ramer, page 111). One of the officers returned fire and wounded Petitioner as he was further assaulting the other. (Defendant's Exhibits G and H, Evidentiary Hearing, November 19, 1993). Plaintiff's testimony before this Court was that he fired on the officers to provoke them, hoping to die as a result. (Transcript of Proceedings, November 19, 1993, Testimony of Bryan Ramer, page 124). At the state court habeas proceeding, Petitioner testified that he felt compelled to fire on the officers because he was an escapee, subject to being shot upon apprehension as a result of that status. (Record Proper, Tape 3, 2/29/84).
 
 
 33
 7. Plaintiff's inconsistencies in the particulars of his testimony are in sharp contrast to the testimony of his former counsel, both at the state proceeding and before this Court. At the outset, I find that Petitioner is not credible based on the documents in this case, his testimony in the state court proceedings, and his testimony before me.
 
 Ineffective Assistance of Counsel
 
 34
 8. Petitioner has alleged that his appointed counsel was ineffective to such a degree that his guilty plea must be set aside. To succeed in this claim, Petitioner must show that his attorney's performance fell below an objective standard of reasonableness and that, but for his counsel's inadequacies, the result of his proceedings in state court would have been different. Strickland v. Washington, 466 U.S. 668 (1984); Tapia v. Tansy, 926 F.2d 1554, 1564 (10th Cir.) cert. den. U.S. (1991).
 
 
 35
 9. Plaintiff alleges that his counsel advised him that he was exposed to a prison term of 126 years based upon the criminal information against him and that this incompetent advice induced him to plead guilty. (Transcript of Proceedings, November 19, 1993, Testimony of Bryan Ramer, page 120-121). The credible evidence does not support the allegation.
 
 
 36
 10. Petitioner's counsel, Andres Benavidez, testified that he advised petitioner in general terms about all the counts in the criminal information, including the maximum possible sentence each count carried. (Transcript of Proceedings, November 19, 1993, Testimony of Andres Benavidez, page 28-29, 36). Benavidez never discussed a prison term of one hundred and twenty-six years with Petitioner. (Transcript of Proceedings, November 19, 1993, Testimony of Andres Benavidez, page 54). Benavidez' advice was that he thought Plaintiff would receive a sentence of thirty years if convicted on all of the counts possible under that criminal information. Id. Apparently, Petitioner reached the conclusion that he faced 126 years in prison through his own logic and never verified that conclusion with his counsel. (Transcript of Proceedings, November 19, 1993, Testimony of Bryan Ramer, page 104).
 
 
 37
 11. Petitioner was represented by counsel who had considerable criminal experience, having represented approximately 300 criminal defendants. (Transcript of Proceedings, November 19, 1993, Testimony of Andres Benavidez, page 42). While most of Benavidez' cases ended in guilty pleas, only three or four defendants he represented had been sentenced to prison terms. (Transcript of Proceedings, November 19, 1993, Testimony of Andres Benavidez, page 43). Benavidez testified that his instructions, as counsel for petitioner, were: "I'm guilty, get the best deal possible." (Transcript of Proceedings, November 19, 1993, Testimony of Andres Benavidez, page 53). Benavidez endeavored to do just that. (Transcript of Proceedings, November 19, 1993, Testimony of Andres Benavidez, page 48). Benavidez considered his client to be well-educated and intelligent. Id. Petitioner did not provide his counsel with any defenses, other than to insist that he was a model prisoner in Oklahoma. Id. Benavidez, after reviewing the record and interviewing Petitioner, reasonably believed that the state's case was strong. (Transcript of Proceedings, November 19, 1993, Testimony of Andres Benavidez, pages 53-54, 59, 70). Benavidez requested and obtained a psychiatric evaluation of petitioner. (Transcript of Proceedings, November 19, 1993, Testimony of Andres Benavidez, page 52). Through plea negotiations, Benavidez was able to ensure that Petitioner's prison exposure was not mandatory. (Transcript of Proceedings, November 19, 1993, Testimony of Andres Benavidez, page 57). Additionally, Benavidez' negotiations insured that a second set of charges arising from an escape attempt by petitioner were basically nullified. (Transcript of Proceedings, November 19, 1993, Testimony of Andres Benavidez, page 55). The sentences imposed on two charges arising from that event, assault by a prisoner and escape from jail, were to run concurrently with any other sentences imposed. (Defendant's Exhibit D, Evidentiary Hearing, November 19, 1993). Counsel's representation also relieved Petitioner from exposure to habitual offender and firearms enhancement, as well as the possibility of enhancement based on aggravating circumstances. Counsel filed motions, sought witnesses and information from Oklahoma, and diligently negotiated for a favorable plea agreement.
 
 
 38
 12. In his wholesale attack on his lawyer's ability, Petitioner specifically complains of his counsel's failure to consider any possible defenses. However, as noted above, counsel obtained a psychiatric evaluation and examined the facts of the case. Further, counsel was under Petitioner's instructions to get the best deal (plea) possible. Benavidez' opinion was that Petitioner faced a considerable risk going to trial in the face of a strong case by the state. (Transcript of Proceedings, November 19, 1993, Testimony of Andres Benavidez, page 54). From the evidence presented, this was not an unreasonable opinion, especially given the inflammatory facts of the shooting and the rural area where venue attached. The shooting of two police officers engaged in a routine traffic stop is expected to be looked upon with more surprise and less sympathy in rural New Mexico than in a metropolitan area. An attorney does not have an obligation to undertake investigation which, in his reasoned judgment, does not have promise. Harvey v. United States, 850 F.2d 388, 400 (8th Cir. 1988). Benavidez' investigation of Petitioner's possible defenses was reasonable under the circumstances.
 
 
 39
 13. One of the possible defenses which Petitioner believes his counsel should have pursued more vigorously was his alleged inability to form the specific intent necessary to commit assault with intent to commit a violent felony upon a police officer because of sleep deprivation and intoxication. With regard to intoxication, Petitioner asserts that he consumed one pint of vodka shortly before he shot and wounded the police officers. Petitioner requested that his medical records from the hospital where he was treated for the gunshot wound he suffered be entered as an exhibit, in order to impeach Benavidez. (Transcript of Proceedings, November 19, 1993, pages 92-97). The records were introduced over the objection of counsel for the Respondent. (Transcript of Proceedings, November 19, 1993, page 99). The medical records reflect that at 3:30 p.m. on November 26, a blood specimen was collected from Petitioner and subjected to a blood alcohol analysis. The analysis showed a blood alcohol content of 36 milligrams per deciliter. Simple arithmetic converts that amount to the more familiar measurement of .036%, or slightly greater than one-third of the presumed level of intoxication in New Mexico at that time. Because the time at which Petitioner drank the alcohol is unknown, there is no way to determine if Petitioner's blood alcohol level was rising or falling. Under these circumstances, it was reasonable for Benavidez' to give little weight to the possible defense of intoxication at the time the plea bargain was made.
 
 
 40
 14. This court should not engage in second guessing an attorney's actions based on hindsight. It should extent deference to counsel's tactical judgments. Osborne v. Shillinger, 861 F.2d 612, 625 (10th Cir. 1988). Moreover, there is a strong presumption that counsel's actions constitute reasonable professional assistance of counsel. Strickland, 466 U.S. at 689. With these principles in mind, having heard the witnesses and observed their demeanor, reviewed the entire file before this Court, and reviewed the record proper from the state court, I find that Petitioner was not denied effective assistance of counsel.
 
 Coercion of Guilty Plea
 
 41
 15. Petitioner contends that his guilty plea was coerced for the following reasons: He did not have complete understanding of the charges against him; he did not understand the value of the commitments made to him by the prosecutor and his lawyer; and his guilty plea was not voluntary but rather coerced by virtue of alleged inhumane treatment at the Torrance County Detention Center.
 
 
 42
 16. A collateral attack on a conviction resulting from a guilty plea is "confined to whether the underlying plea was both counseled and voluntary." Osborne, 997 F.2d at 1327 (quoting United States v. Broce, 488 U.S. 563, 569 1989). Petitioner's assertion that he did not understand the charges against him or the value of the commitments made to him go the whether his plea was counseled. Petitioner's claim of coercion goes to the voluntariness of his plea and stems from his contentions that inhumane treatment in the Torrance Co. Detention Center and his counsel's failure to investigate or pursue possible defenses led to his guilty plea.
 
 
 43
 17. The evidentiary hearing held before this Court and the record proper both reflect that Petitioner was adequately counseled before entering his plea. When Petitioner appeared for his plea and sentencing hearing in state court, he affirmed under oath that he had gone over the plea agreement with his attorney. (Record Proper, Tape #1, 2/28/84). Petitioner also asserted that he had freely and willingly giving up his constitutional right to a trial. Id. Petitioner further testified that his attorney went over all of the counts in the criminal complaint with him. Id. These facts, together with the testimony of both Petitioner and his counsel at the evidentiary hearing before this Court, establish that Petitioner entered into a counseled plea of guilty.
 
 
 44
 18. Solemn declarations in open court carry a strong presumption of verity. Blackledge v. Allison, 431 U.S. 63, 74 (1977). Responses in a plea hearing are subject to challenge, but they constitute a formidable barrier in any subsequent proceedings. Worthen v. Meachum, 842 F.2d 1179, 1183 (10th Cir. 1989). Further, a defendant's statements at a plea hearing should be regarded as conclusive as to truth and accuracy in the absence of a believable, valid reason justifying a departure from the apparent truth of these statements. See, Hedman v. United States, 527 F.2d 20, 22 (10th Cir. 1975). It is in the light of Petitioner's responses at the February 28, 1984 plea hearing in New Mexico District Court that his claim of an involuntary plea is considered.
 
 
 45
 19. Evidence showing mistreatment by police does not establish that a guilty plea is involuntary. The Court should consider the circumstances surrounding the plea, including the plea bargain agreement, Petitioner's counsel, and Petitioner's own testimony. Clark v. Solem, 693 F.2d 59, 62 (8th Cir. 1982) cert. den. 460 U.S. 1090 (1983). In this case, Petitioner's claim that mistreatment by jailers at the Torrance Co. Detention Center precipitated his guilty plea is not a believable contention.
 
 
 46
 20. Petitioner's assertion that he was forced to plea guilty because of mistreatment in jail discounts the favorable bargain which was negotiated on his behalf. Petitioner's counsel negotiated a plea bargain which greatly limited Petitioner's liability. An absolute cap of eighteen years was put on any sentence Petitioner would be required to serve. Respondents' Exhibit E. Consequently, Petitioner did not serve any additional time for charges arising out of his escape from the Torrance County Detention Center. Id. The escape attempt and the prospect of future criminal liability from it undoubtedly made the guilty plea more attractive. The early guilty plea is consistent with Petitioner's instruction to his attorney to get him the best deal possible. (Transcript of Proceedings, November 19, 1993, Testimony of Andres Benavidez, page 53).
 
 
 47
 21. Petitioner never complained to his attorney of physical abuse or coercion by his jailers. (Transcript of Proceedings, November 19, 1993, Testimony of Andres Benavidez, pages 67-68). His only complaint to his attorney was that his cast was itching. Id. This is inconsistent with his claim that he was being abused while in jail.
 
 
 48
 22. Petitioner objected to the Order of the Court preventing him from producing witnesses which he believes would corroborate his claim of coercion. (Transcript of Proceedings, November 19, 1993, pages 61-62). The Court suggested that witnesses were available to present evidence with regard to coercion, including Petitioner himself. (Transcript of Proceedings, November 19, 1993, page 63). However, Petitioner failed to present any testimony with regard to coercion. (Transcript of Proceedings, November 19, 1993, Testimony of Bryan Ramer).
 
 
 49
 23. Petitioner has failed to present a valid, believable reason to disregard his assertions at the plea hearing, under oath, that his guilty plea was not coerced. Accordingly, this Court finds that Petitioner entered into a voluntary guilty plea.
 
 Recommended Disposition
 
 50
 That the petition be denied.
 
 
 
 *
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [1]
 A copy of the district court's order as well as of the adopted report and recommendation of the magistrate judge are attached
 
 
 [1]
 Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. Sec. 636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections within the ten-day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed
 
 
 [2]
 The factors set forth in 28 U.S.C. Sec.2254(d) are:
 (1) that the merits of the factual dispute were not resolved in the State court hearing;
 (2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;
 (3) that the material facts were not adequately developed at the State court hearing;
 (4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State Court proceeding;
 (5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;
 (6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding;
 (7) that the applicant was otherwise denied due process of law in the State court proceeding;
 (8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produces as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record.