**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 7 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JOHN W. AUTEM,

    Defendant-Appellant.

No. 02-3059
(D. Kan.)
(D.Ct. No. 00-CR-40087-RDR)

---

**ORDER AND JUDGMENT**[*]

---

James A. Brown (Eric F. Melgren, United States Attorney, with him on the brief), Assistant United States Attorney, Topeka, Kansas, for Plaintiff-Appellee.

Douglas M. Barlow, Beaumont, Texas, for Defendant-Appellant.

---

Before **KELLY**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **OBERDORFER**,[**] District Court Judge.

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] The Honorable Louis F. Oberdorfer, Senior United States District Judge for the District of Columbia, sitting by designation.

John Autem appeals his convictions for conspiracy to manufacture methamphetamine, attempt to manufacture methamphetamine, and possession of ephedrine and pseudoephedrine with intent to manufacture methamphetamine. *See* 21 U.S.C. §§ 841(a), 841(b)(1)(A), 841(c), 846; 18 U.S.C. § 2. He argues "the evidence is insufficient to support each of the convictions." We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm the convictions.

## I. Facts

Based on information from a confidential informant, the Labette County Sheriff's Department suspected there was a methamphetamine laboratory on Mr. Autem's property. Law enforcement officers searched Mr. Autem's property on two separate occasions and found numerous items associated with methamphetamine manufacturing. The officers also found marijuana. Although the officers initially arrested only Mr. Autem's daughter, they soon after arrested her boyfriend, Shane Beery. Mr. Beery indicated Mr. Autem was involved in the methamphetamine manufacturing. Officers subsequently arrested Mr. Autem.

Mr. Autem's daughter entered into a plea agreement with the government and pled guilty to possession of marijuana. Mr. Beery also entered into a plea agreement and pled guilty to conspiracy to manufacture methamphetamine. In

exchange for Mr. Beery's testimony against Mr. Autem and other "substantial assistance," the government agreed to dismiss some of the charges against him, to not bring any additional charges against him, and to recommend he receive a lighter sentence. Mr. Autem denied any involvement in the methamphetamine manufacturing and entered a not guilty plea.

At trial, Mr. Beery testified he met Mr. Autem at Mr. Autem's home and discussed a "more efficient way of manufacturing" methamphetamine using anhydrous ammonia. Mr. Autem wanted to learn this new method. Mr. Autem therefore agreed to supply Mr. Beery with "anhydrous [ammonia] to make more methamphetamines" in exchange for Mr. Beery's instruction on "how to manufacture methamphetamines with anhydrous ammonia." Mr. Autem indicated he could get the anhydrous ammonia "because he owned a farm." He also indicated he could get other supplies like pseudoephedrine from a veterinary supply catalog.

A few weeks later, Mr. Beery manufactured four quarts of methamphetamine oil in a metal outbuilding behind Mr. Autem's home, enough to produce approximately two ounces of methamphetamine. He used materials both he and Mr. Autem provided. Mr. Autem arrived home from work and was present

during the crucial stages of the manufacturing process. Mr. Autem indicated he wanted the methamphetamine left as oil because "[h]e knew how to do the last process" of "powder[ing] it out." Prior to Mr. Beery's departure, he and Mr. Autem split the methamphetamine oil between themselves, each taking two jars. Mr. Beery left a propane tank in the outbuilding for Mr. Autem to fill with anhydrous ammonia according to their agreement.

The government introduced several items of physical evidence it found in Mr. Autem's outbuilding. The government found several precursors, reagents, solvents, and other supplies used in methamphetamine manufacturing. One such item was a propane tank that contained anhydrous ammonia. In addition, the government found some items containing traces of methamphetamine, including a jar of methamphetamine oil.

The government also introduced as evidence items it found in Mr. Autem's home. The government found books describing how to manufacture methamphetamine; veterinary supply catalogs selling substances used in methamphetamine manufacturing; a catalog selling chemistry laboratory equipment similar to items found in the outbuilding; a receipt for pseudoephedrine from a veterinary supply company dated approximately two

weeks before the alleged manufacturing;[1] and a list in Mr. Autem's handwriting of chemical names and equipment commonly used in methamphetamine manufacturing.

Finally, to "show knowledge, absence of mistake, et cetera," the government introduced evidence that Mr. Autem had a previous conviction for possession of methamphetamine with intent to sell. During the investigation of Mr. Autem at that time, the government found recipes for manufacturing methamphetamine at his home.

After a five-day trial, a jury convicted Mr. Autem of (1) conspiracy to manufacture more than fifty grams of methamphetamine; (2) attempt to manufacture more than fifty grams of methamphetamine; and (3) possession of ephedrine and pseudoephedrine with intent to manufacture methamphetamine and with reasonable cause to believe the chemicals will be used to manufacture methamphetamine. Mr. Autem appeals.

---

[1] The receipt was in Mr. Autem's wife's name, but she testified she did not place the order.

**II. Discussion**

On appeal, Mr. Autem argues "the evidence was wholly insufficient to support the convictions of each of the counts." We review de novo the sufficiency of the evidence supporting Mr. Autem's convictions, viewing "the evidence and all reasonable inferences therefrom in the light most favorable to the jury verdicts." *United States v. Higgins*, 282 F.3d 1261, 1274 (10th Cir. 2002). We will affirm the convictions "if a reasonable jury could find the defendant guilty beyond a reasonable doubt" based on the evidence and the inferences drawn therefrom. *United States v. Wilson*, 107 F.3d 774, 778 (10th Cir. 1997) (quotation marks and citation omitted).

Mr. Autem first argues "the government relie[d] almost exclusively upon the suspect and controverted testimony of [Mr.] Beery, [which] was insufficiently corroborated to support the convictions." He believes that "absent the testimony of [Mr. Beery], there is absolutely no evidence that Mr. Autem participated in any manner in a conspiracy to manufacture methamphetamine, any attempt to possess or manufacture methamphetamine, or any possession of precursor materials with the intent that they be used in the manufacture of methamphetamine."

We have repeatedly held a jury "may convict a defendant solely on the

basis of the uncorroborated testimony of an accomplice." *United States v. Smith*, 131 F.3d 1392, 1399 (10th Cir. 1997), *cert. denied*, 522 U.S. 1141 (1998). *See, e.g., United States v. Ivy*, 83 F.3d 1266, 1284 (10th Cir.) ("We will not reverse a conviction merely because the verdict was grounded on the uncorroborated testimony of a coconspirator."), *cert denied*, 519 U.S. 901 (1996). "Furthermore, the credibility of witnesses is a matter for the jury, and on appeal we must resolve credibility issues in the jury's favor unless the testimony is 'inherently incredible.'" *Smith*, 131 F.3d at 1399 (quoting *Tapia v. Tansy*, 926 F.2d 1554, 1562 (10th Cir. 1991)). Witness testimony is inherently incredible only if it is "'unbelievable on its face, *i.e.*, testimony as to facts that [the witness] physically could not have possibly observed or events that could not have occurred under the laws of nature.'" *Tapia*, 926 F.2d. at 1562 (quoting *United States v. Garner*, 581 F.2d 481, 485 (5th Cir. 1978)).

Under these principles, we reject as a matter of law Mr. Autem's argument the evidence is insufficient to support his convictions because Mr. Beery's testimony was uncorroborated, unreliable, and "controverted." *See Smith*, 131 F.3d at 1399. Mr. Autem has not suggested Mr. Beery's testimony is "inherently incredible." And, after reviewing the record, we are satisfied his "testimony was well within the range which a rational jury could believe." *Id.* We therefore

"resolve [the] credibility choices in favor of the jury's verdict." *Id.*

Mr. Autem next argues the evidence is insufficient to support his conspiracy conviction because "Mr. Autem's relationship with [Mr.] Beery was practically non-existent, and the relationship with his daughter is not a sufficient link to establish a conspiracy through her." He also claims this "one-time isolated event" is insufficient to establish the existence of a conspiracy.

Viewed in the light most favorable to the jury's verdict, we conclude the evidence is sufficient to support Mr. Autem's conviction of conspiracy to manufacture methamphetamine. While we agree with Mr. Autem that his "mere presence at the scene of the crime or association with [his daughter or Mr. Beery] is not enough to support a conspiracy conviction," *United States v. Espinosa*, 771 F.2d 1382, 1392 (10th Cir. 1985), the evidence in the record demonstrates he agreed with Mr. Beery to manufacture methamphetamine and actively participated in achieving this objective.

In addition, we do not believe it significant under the facts of this case that the manufacturing may have been a "one-time isolated event." The government was not trying to link Mr. Autem's conduct to a larger conspiracy, as in the cases

Mr. Autem cites in support of his argument. *See United States v. Evans*, 970 F.2d 663 (10th Cir. 1992); *United States v. McIntyre*, 836 F.2d 467 (10th Cir. 1987). Instead, the government merely alleged his conduct as evidence of a conspiracy to manufacture methamphetamine on one particular occasion. The government did not need to prove Mr. Autem engaged in further illegal conduct to support its charge that Mr. Autem conspired to manufacture methamphetamine on this particular occasion. *See, e.g., United States v. Esparsen*, 930 F.2d 1461, 1471 (10th Cir. 1991) ("The core of a conspiracy is an agreement to commit *an unlawful act*." (emphasis added).). After reviewing the record, we conclude there is sufficient evidence to support Mr. Autem's conspiracy conviction.

Mr. Autem next argues the evidence is insufficient to support his convictions for attempt to manufacture methamphetamine and possession of precursor chemicals because Mr. Beery's testimony raised only "a suspicion, albeit a questionable one, of Mr. Autem's involvement." He also claims the evidence is insufficient to show he had "the requisite intent" or "guilty *mens rea*." We reject these arguments. After reviewing the record in its entirety, some of which we discussed above, we conclude "a reasonable jury could find [Mr. Autem] guilty beyond a reasonable doubt" of attempt to manufacture methamphetamine and possession of precursor chemicals. *Wilson*, 107 F.3d at

778.

## III.  Conclusion

In sum, we conclude there is sufficient evidence supporting Mr. Autem's

convictions.  We therefore **AFFIRM** all three convictions.


**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge