### The PEOPLE of the State of Colorado, Petitioner,

v.

### The DISTRICT COURT OF EL PASO COUNTY, Colorado; the Honorable Matt M. Railey, District Judge, Respondents.

#### No. 93SA340.

Supreme Court of Colorado,
En Banc.

March 7, 1994.

John Suthers, Dist. Atty., Fourth Judicial Dist., Robert B. Harward, Deputy Dist. Atty., Colorado Springs, for petitioner.

Dennis W. Hartley, P.C., Dennis W. Hartley, Rick B. Levinson, Colorado Springs, for defendant James Andrew Carroll.

Justice VOLLACK delivered the Opinion of the Court.

In this original proceeding under C.A.R. 21, we issued a rule directing the respondent, El Paso County District Court,[1] to show

---

1. In the petition, the respondents are labeled as "The District Court of El Paso County, Colorado;

cause why it should not be prohibited from excluding the prosecution's witness' testimony under the provisions of Colorado Rule of Evidence 403 [2] and the Confrontation Clause of the Sixth Amendment and the Colorado Constitution.[3] The trial court entered its ruling to exclude the witness' testimony in a pretrial hearing on the motion *in limine* of the defendant, James Andrew Carroll. We now make the rule absolute and remand to the respondent court for further proceedings consistent with this opinion.

## I.

The defendant, James Andrew Carroll (Carroll), was charged in El Paso County District Court with the crimes of first degree murder,[4] aggravated robbery,[5] second degree burglary,[6] and crime of violence [7] based on an incident that occurred on November 7, 1989, in which the defendant, accompanied by his co-defendants, allegedly shot and killed a man during the commission of a robbery and burglary.

Carroll was initially brought to trial on April 5, 1993, and was tried separately from his co-defendants. The district court ordered a mistrial due to juror misconduct during deliberations.

Prior to the trial, the defense filed a motion *in limine* to preclude the petitioner, the People of the State of Colorado (the People), from introducing the testimony of one of its witnesses, Starlet Arrington (Arrington), the defendant's cousin, under CRE 403 and the Confrontation Clause of the Sixth Amendment of the United States Constitution and Article II, Section 16, of the Colorado Constitution. In particular, the motion asserted that the defense "[could not] explore the biases and prejudices" of the witness without introducing the fact that Carroll was convicted of manslaughter and sentenced to eight to fifteen years in the death of the witness' father in 1990.

In March 1993, a pretrial hearing was held on the motion. The district court deferred ruling on whether the witness' testimony could be admitted until the prosecution had presented its case. The court, however, ordered both sides to refrain from referring to the witness' expected testimony during opening statements.

At the close of the prosecution's case, the prosecution asked to call Arrington as a witness. An in-camera hearing was held, and the witness testified that Carroll was her first cousin on her father's side; that she was at an apartment party with the defendant shortly before the murder occurred; that, after the murder, Carroll unexpectedly never returned to his mother's house in Colorado where the witness was also staying; and that a week later, she called her father, who lived in Michigan, and first learned that Carroll was temporarily staying with him. She further testified that, in February 1989, three months after the burglary, she visited her father and had a conversation with Carroll in which she asked him why he left Colorado if he were innocent. During this conversation, Carroll admitted committing the murder.

Arrington stated that she lacked present memory of his statements, but that she reported the statements Carroll made in Michigan truthfully to a military investigator at Fort Dix, New Jersey, when she was serving in the Army. At the time she made the statements to the military, she additionally stated that she was feeling upset about her father's recent death. Arrington said that the investigator recorded her statement in writing and that she reviewed the investigator's written report at the time, initialed it, and verified its accuracy.

The Honorable Matt M. Railey, District Judge." We refer to the respondents jointly as "El Paso County District Court" or "district court."

**2.** CRE 403 is titled "Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time."

**3.** U.S. Const. amends. VI & XIV; Colo. Const. art. II, § 16.

**4.** § 18–3–102(1), 8B C.R.S. (1986 & 1993 Supp.).

**5.** § 18–4–302(1)(b), 8B C.R.S. (1986).

**6.** § 18–4–203, 8B C.R.S. (1986).

**7.** § 16–11–309, 8A C.R.S. (1986 & 1993 Supp.).

The military investigator testified that he is the person who received and recorded Arrington's statement. The military investigator's report indicates, in pertinent part, that Carroll admitted to Arrington that he "had killed the guy in Colorado Springs," "everyone knows I killed that guy in Colorado Springs," and that he "had gotten the gun that was used in the murder ... from a Mexican guy named Daniel."

On cross-examination, Arrington testified that, although she was upset that Carroll had killed her father, she still loved her cousin. Upon further inquiry by the judge, she emphatically denied the defense's implication that she made these statements to the investigator only to seek revenge. Arrington finally testified that she never discussed her statements to the military investigator with her grandmother since her grandmother was disturbed with her coming forward with information and was not interested in knowing what Arrington had said.

The defense introduced evidence to impeach Arrington's credibility. Troy Zook (Zook), a legal investigator appointed to this case, testified that he had met with Arrington prior to the trial and at that time she stated that she was unable to recall the exact statement she had made to the military investigator. Zook further stated that Arrington indicated that Carroll's statement that everyone "knows I killed the guy" could have been that they "think I killed the guy."

Zook testified that he had also interviewed Arrington's grandmother who stated that she had spoken with Arrington about her statements to the military investigator. Zook additionally stated that the grandmother claimed that Arrington had told her about her conversation with Carroll in Michigan and that Carroll's statement was: "They think I killed the guy in Colorado." Zook finally stated that the grandmother contended that she had a recent conversation with Arrington and sensed that Arrington was and still is vindictive, bitter, and angry toward Carroll for killing her father.

Based upon the testimony and the prosecution and defense counsel's arguments, the district court granted the motion to exclude all of Arrington's testimony on April 28, 1993,

on the grounds that under CRE 403 the probative value of the testimony was outweighed by the danger of unfair prejudice to the defendant. Even in the absence of CRE 403, the court concluded that the same ruling would be required because permitting Arrington to testify would violate the defendant's right to confront the witness against him. The district court specifically stated:

... I would characterize her as on the face of her testimony a credible witness, seems fairly believable and fairly honest to the Court at least....

....

... She also is the only one that has any, essentially any, incriminating statements from the Defendant that are of much weight. So there is certainly no question that this evidence is probative.

... The unfair prejudice I think is obvious.... [Defense counsel] would have to essentially not cross-examine this witness ... as to her motivation for her statements....

....

... [T]he prejudice is not only that they may find him guilty of first degree murder based upon [his criminal conviction in the killing of her father]. [The jury] might even impose the death penalty based upon that when it's not admissible in the death penalty phase. So the prejudice is very great.

The district court characterized the resulting prejudice as "immense" and did not believe that it could be cured by any limiting instruction.

After submitting the case to the jury on May 5, 1993, the district court ordered a mistrial due to juror misconduct during deliberations. The case has been set for retrial on July 18, 1994, and in November 1993, the People filed a new motion asking the district court to reconsider its decision to exclude the testimony. The district court denied the motion without a hearing, finding that the arguments made in the People's motion to reconsider did not merit changing its initial ruling. The People then petitioned this court for relief under C.A.R. 21.

## II.

We first address the threshold question of the authority of this court to review the evidentiary ruling by the trial court pursuant to an original proceeding. An original proceeding under C.A.R. 21 is an appropriate remedy "where the district court is proceeding without or in excess of its jurisdiction," C.A.R. 21, and "where the trial court has abused its discretion and where an appellate remedy would not be adequate." *People v. District Court*, 868 P.2d 400 (Colo.1994); *Halaby, McCrea & Cross v. Hoffman*, 831 P.2d 902, 905 (Colo.1992). The granting of the remedy is entirely within the discretionary authority of this court. *People v. District Court*, 868 P.2d 400 (Colo.1994).

If this case is retried without an appellate determination as to the correctness of the district court's motion *in limine* ruling, then appellate review upon final judgment would not afford adequate relief since jeopardy will have attached and the defendant cannot be retried.[8] We conclude that the exercise of original jurisdiction is appropriate to address the correctness of the district court's ruling on the motion *in limine*. *See People v. District Court*, 664 P.2d 247 (Colo.1983) (holding that an original proceeding is available to the prosecution to review whether the trial court abused its discretion in excluding fingerprint evidence in view of the fact that the prosecution's ability to litigate would be impaired by the trial court's order and because the defendant could not be retried if acquitted).

## III.

To determine whether the rule to show cause should be made absolute as to the proffered evidence, we must first consider the district court's motion *in limine* ruling to exclude the witness from testifying because the probative value was substantially outweighed by the danger of unfair prejudice. In reviewing the trial court's finding, we perform a two-step analysis in which we first ask: Is the evidence relevant under CRE 401,[9] and, if so, should the evidence be excluded as unfairly prejudicial under CRE 403.

### A. *CRE 403 Analysis*

The People contend that the district court misconstrued and misapplied CRE 403.[10] In excluding testimony under CRE 403, the People maintain that the district court incorrectly construed the term "unfair prejudice" to include "prejudice" arising exclusively from the defendant's electing to place his own prior misconduct into evidence by soliciting this evidence from the witness. The People further assert that the proffered testimony of Arrington, Carroll's admission of committing the crime, cannot be deemed to create unfair prejudice in itself. We agree.

Under CRE 403, the district court is accorded considerable discretion in balancing the probative value of the evidence against the danger of unfair prejudice. *People v. Ibarra*, 849 P.2d 33, 38 (Colo.1993). Absent an abuse of discretion, a trial court's evidentiary ruling on the probative value and the prejudicial impact of the evidence will not be disturbed on review. *People v. White*, 199 Colo. 82, 606 P.2d 847 (1980). We have decided that, in performing the Rule 403 balance on review, the evidence should be given its maximal probative weight and its minimal prejudicial effect. *People v. District Court*, 785 P.2d 141, 147 (Colo.1990); *People v. Lowe*, 660 P.2d 1261, 1264 (Colo.1983) (when reviewing the trial court's exercise of discretion, we must "assume the maximum

---

8. Amendment V to the United States Constitution states in pertinent part as follows: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb...."

9. Relevant evidence "means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Because neither party contests the relevancy of the witness' testimony, our discussion is confined to whether the danger of unfair prejudice substantially outweighed the probative value of the evidence.

10. CRE 403 is identical to Fed.R.Evid. 403. CRE 403 states in pertinent part that, "[a]lthough relevant, evidence may be excluded if its probative value is *substantially outweighed* by the danger of unfair prejudice." (Emphasis added.)

probative value that a reasonable fact finder might give the evidence and the minimum unfair prejudice to be reasonably expected").

■ Our analysis of the district court's ruling to exclude Arrington from testifying begins with the observation that Rule 403 strongly favors the admission of evidence. *See People v. District Court,* 868 P.2d 400 (Colo.1994) (citing *United States v. Moore,* 732 · F.2d 983, 989 (D.C.Cir.1984) (holding that testimony was not unfairly prejudicial within the meaning of CRE 403; "the balance should generally be struck in favor of admission when evidence indicates a close relationship to the event charged")); *United States v. Dennis,* 625 F.2d 782, 797 (8th Cir.1980) (stating that the "balance should be struck in favor of admissibility").

■ As articulated by the Federal Advisory Committee in its Note to Rule 403, the "unfair prejudice" language contained in Rule 403 refers to an undue tendency on the part of admissible evidence to suggest a decision made on an improper basis. "Unfair prejudice refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, such as the jury's bias, sympathy, anger or shock." *People v. Goree,* 132 Mich.App. 693, 349 N.W.2d 220 (1984). "Unfair prejudice as used in Rule 403 does *not* mean the damage to a defendant's case that results from legitimate probative force of the evidence." *United States v. Schrock,* 855 F.2d 327, 334–35 (6th Cir.1988). Proffered evidence should therefore not be excluded by the district court as unfairly prejudicial simply because it damages the defendant's case. *People v. District Court,* 785 P.2d at 147. Obviously, evidence proffered by the prosecutor is prejudicial, but not all evidence unfairly prejudices a defendant. *United States v. Chalan,* 812 F.2d 1302, 1308 (10th Cir. 1987).

The case law suggests that the "unfair prejudice" language contained in Rule 403 should be construed to mean the prejudice from the proponent's evidence. Rule 403 must then require balancing the probative value of the proffered evidence against the danger of unfair prejudice. The district court granted the defendant's motion *in limine* to exclude Arrington's testimony, ruling that its admission would be more prejudicial than probative. In excluding Arrington's testimony, the district court confused the balancing inquiry performed under Rule 403, that is, examining the tendered evidence for "unfair prejudice" in the form it is proffered. The People's proffered evidence concerns Arrington's conversation with Carroll in Michigan in which he allegedly admitted to killing the man in Colorado Springs. Arrington's testimony that Carroll stated that he "had killed the guy in Colorado Springs," "everyone knows I killed that guy in Colorado Springs," and that he "had gotten the gun that was used in the murder … from a Mexican guy named Daniel" is sufficiently probative to warrant admission under CRE 403. The content of Arrington's conversation with Carroll included within the military investigator's report should have been admissible under CRE 403 since it does not unfairly prejudice the defendant. The nature of the evidence is neither unduly inflammatory nor likely to prevent the jury from making a rational decision.

The unfairly prejudicial evidence does not involve the content of Arrington's testimony. Arrington's testimony can be elicited without intimating or directly referring to the defendant's killing her father. Rather, the unfairly prejudicial evidence concerns Carroll's close association to the witness and the fact that he killed her father, which may never be presented unless the defendant elects to pursue it on cross-examination. The fact that potentially prejudicial evidence may be introduced on cross-examination is not a sufficient basis to exclude Arrington's otherwise admissible testimony concerning Carroll's admission to committing the crime.[11]

---

**11.** Although the facts are distinguishable from our case, the decision in *United States v. Tom,* 640 F.2d 1037 (9th Cir.1981), lends further support for this conclusion. In *Tom,* the defendant was prosecuted for cocaine distribution and sought to raise the issue of entrapment. The defendant's girlfriend testified that she had known the defendant for several years and had never known him to deal in drugs. Evidence that the defendant had been found guilty five

In further analyzing the district court's application of CRE 403, we also find it necessary to address the implication of the district court's ruling. The ramifications of the district court's construction of CRE 403 is that it inadvertently rewards a defendant's egregious misconduct which affects a witness by barring the witness from testifying altogether. The trial court's ruling has the effect of suppressing a witness' testimony whenever a defendant in cross-examining a witness can solicit evidence involving the defendant's egregious misconduct toward the witness.

In assuming the maximum probative value that a reasonable fact finder might give the evidence and the minimum unfair prejudice to be reasonably expected, we conclude that Arrington's testimony is sufficiently probative to warrant admission under CRE 403.

### B. Impeaching the Witness' Credibility for Bias or Prejudice

We additionally find that the district court limited the prejudicial effect of the witness' testifying rather than the evidence itself in performing its Rule 403 balancing analysis and excluding Arrington's testimony. In our view, the district court's analysis misconstrued the nature of the CRE 403 balancing inquiry by blurring the distinction between the message and the messenger. In excluding Arrington's testimony, the district court adopted the legal rationale asserted in the defendant's motion *in limine.* In impeaching Arrington's credibility by exploring her alleged bias and prejudice, the defendant proposed, and the district court agreed, that Carroll cannot effectively cross-examine Arrington without introducing prejudicial evidence, that Carroll killed her father, which would otherwise be inadmissible. We disagree.

The district court did not limit the scope and extent of cross-examination. The only limitation placed on Carroll's right to introduce evidence to expose the witness' alleged

bias is self-imposed. Carroll can explore Arrington's alleged bias and effectively impeach her credibility as a witness by examining Arrington's present and past recollection of Carroll's statements, the statement she made to her grandmother, and the content of the statements. Therefore, in order to effectively impeach Arrington's credibility, the defendant need not subject himself to the risk of exposing his own prior misconduct.

### IV.

■ Finally, the trial court concluded that the exclusion of the evidence is constitutionally mandated pursuant to the Confrontation Clause of the Sixth Amendment of the United States Constitution and to Article II, Section 16, of the Colorado Constitution. Carroll asserts that, if Arrington is permitted to testify, his right to confrontation pursuant to the Sixth Amendment of the United States Constitution and to Article II, Section 16, of the Colorado Constitution would be violated since he cannot effectively impeach her, without introducing evidence that Carroll killed her father. The People contend that the defendant's assertion is based on a self-imposed tactical constraint, and not on any trial court ruling limiting cross-examination, and that accordingly there is no constitutional violation. We agree.

The Sixth Amendment to the United States Constitution states in pertinent part as follows:

In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him....

■ The primary purpose of the Confrontation Clause is to secure for a defendant the opportunity of cross-examination. *Davis v. Alaska,* 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1109–10, 39 L.Ed.2d 347 (1974). In *People v. Bowman,* 669 P.2d 1369 (Colo. 1983), we recognized a criminal defendant's right to confront the witnesses against him

years earlier on a charge of distributing cocaine and hashish was relevant to undermine the credibility of her testimony, although the jury may well have improperly inferred predisposition from the defendant's past conviction. In admitting the witness' testimony, the trial court acknowledged that the witness was a crucial de-

fense witness and that it was important that the jury fully evaluate her credibility. The court of appeals determined that the trial court did not abuse its discretion in balancing the probative value against the prejudice and admitting the testimony.

as guaranteed by the Confrontation Clauses of the United States and Colorado Constitutions. A criminal defendant has the right to conduct liberal cross-examination of prosecution witnesses, but the trial court retains discretion to limit cross-examination. *Merritt v. People,* 842 P.2d 162 (Colo.1992). Cross-examination is designed to expose the motives of a witness testifying against a defendant in order to establish possible bias or prejudice. *People v. Ibarra,* 849 P.2d 33, 39 (Colo.1993); *People v. Rubanowitz,* 688 P.2d 231 (Colo.1984).

In *Tapia v. Tansy,* 926 F.2d 1554 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 115, 116 L.Ed.2d 84 (1991), the Court of Appeals observed:

> The Confrontation Clause ensures the defendant the opportunity to engage in "effective cross-examination of witnesses against him," *Pennsylvania v. Ritchie,* 480 U.S. [39,] 53, 107 S.Ct. [989,] 999[, 94 L.Ed.2d 40] [ (1987) ], but it does not include "the power to require the ... disclosure of any and all information that might be useful in contradicting unfavorable testimony." *Id.* at 51, 107 S.Ct. at 998. Effective cross-examination only requires that the trial judge not limit the scope of cross-examination so that it prevents the jury from having sufficient information to make a "discriminating appraisal" of the relevant issue.

*Id.* 926 F.2d at 1559.

Similarly, in *People v. Lesney,* 855 P.2d 1364 (Colo.1993), we concluded that the trial court acted within its discretion in ruling that the defendant, in cross-examining the prosecution's witness by introducing certain hearsay statements made by the detective to show his personal bias, would be opening the door to testimony regarding the detective's unproven suspicions that the defendant was responsible for killing a person in an unrelated and uncharged incident.

▮ The right to confrontation is not denied simply because the prosecution is permitted to examine a witness whom the defense declines for tactical reasons to cross-examine. *See United States v. Cree,* 778 F.2d 474, 479 (8th Cir.1985) (no Confrontation Clause violation when defense counsel failed to seek pretrial ruling on four-year-old complainant's ability to testify and declined, for tactical or other considerations, to call complainant as a witness); *United States v. Farnsworth,* 729 F.2d 1158, 1162 (8th Cir. 1984) (finding no Confrontation Clause violation when the defendant's counsel made a strategic decision not to cross-examine parole officers about an identification because of the danger of revealing prior convictions); *United States v. Howard,* 751 F.2d 336, 338 (10th Cir.1984) (finding that the defendant's Sixth Amendment right to confrontation is not denied when the defense counsel is given the opportunity to cross-examine witness on points he considered prejudicial to his client, but for tactical reasons declined to do so), *cert. denied,* 472 U.S. 1030, 105 S.Ct. 3507, 87 L.Ed.2d 638 (1985); *United States v. Hines,* 696 F.2d 722, 731 (10th Cir.1982) (same); *United States v. Gibbs,* 662 F.2d 728, 730–31 (11th Cir.1981) (concluding that counsel's failure to cross-examine witness or bring out specific evidence was a tactical decision).

In considering the defendant's Confrontation Clause claim within the context of settled case law and in applying the legal principles to the evidence in the record, we are persuaded that defense counsel is free to cross-examine the prosecution's witness to elicit testimony that would demonstrate Arrington's "bias" and that would discredit the veracity of the witness' testimony. The defendant's only limitation is the risk of exposing his prior criminal misconduct. Therefore, we find that the defendant's right to confrontation would not be denied by allowing the witness to testify.

## V.

We hold that the prosecution's proffered evidence is not unfairly prejudicial within the meaning of Rule 403. We now make the rule absolute as to the district court's exclusion of the proffered testimony under CRE 403, and remand to the district court for further proceedings consistent with this opinion.