23CA1765 Peo v Soriano 11-13-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1765
El Paso County District Court No. 22CR1265
Honorable William B. Bain, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Moises Jesus Soriano,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE BROWN
Dunn and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 13, 2025

Philip J. Weiser, Attorney General, Allison S. Block, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

The Noble Law Firm, LLC, Antony Noble, Lakewood, Colorado, for Defendant-Appellant

¶ 1 Defendant, Moises Jesus Soriano, appeals the judgment of conviction entered on a jury verdict finding him guilty of attempted first degree murder, first degree assault, aggravated robbery, and six crime of violence sentence enhancers. Soriano contends that the district court erred by admitting certain evidence and by imposing consecutive sentences for attempted first degree murder and aggravated robbery. We affirm Soriano's judgment of conviction.

## I. Background

¶ 2 In February 2022, Yoel Hernandez Fresno drove to an apartment complex in Colorado Springs to visit a friend. Fresno pulled into a spot about five feet away from where Soriano, an acquaintance, had parked his car. Soriano was standing outside his car, and another person[1] was sitting in the passenger seat.

¶ 3 Fresno stepped out of his car and approached Soriano with his hand outstretched to greet him. Soriano shook Fresno's hand, pulled him close, and said, "Oh, I know what you did." The other person got out of Soriano's car, and the two flanked Fresno.

---

[1] Fresno did not recognize the other person, and the police never identified him.

Soriano took out a knife and slashed and stabbed Fresno from the front while the other person grabbed Fresno from behind and stabbed him in the back.  At some point, Fresno tried to use his phone to call the police, but the assailants threatened to "pop" him and took his phone.

¶ 4     Soriano and the other person stabbed Fresno over ten times, inflicting serious wounds to his face, head, throat, chest, and back.  They also punctured one of Fresno's lungs.  Police and paramedics responded to a call from a resident of the apartment complex who reported the attack.  Immediately after the assault, Fresno told the paramedics that he did not know who had attacked him.  Later, Fresno told police that Soriano had stabbed him, but he was unable to describe the other assailant in any detail.

¶ 5     The prosecution charged Soriano with attempted first degree murder, first degree assault, aggravated robbery, and six crime of violence sentence enhancers.  A jury convicted him as charged.  The district court merged the attempted murder and assault convictions and sentenced Soriano to consecutive prison terms of twenty years for attempted murder and ten years for aggravated robbery.

## II. Evidentiary Rulings

¶ 6 Soriano contends that the district court erred by (1) admitting an audio clip from a detective's interview of Fresno and (2) allowing a police officer to testify about general victim behavior. We perceive no reversible error.

### A. Standard of Review

¶ 7 We review a trial court's evidentiary rulings for an abuse of discretion. *Zapata v. People*, 2018 CO 82, ¶ 25. A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair or if it misconstrues or misapplies the law. *People v. Liggett*, 2021 COA 51, ¶ 16, *aff'd*, 2023 CO 22.

### B. The Audio Clip

¶ 8 Soriano contends that the district court erred by admitting an audio clip from a detective's interview of Fresno as a prior inconsistent statement under section 16-10-201, C.R.S. 2025. Based on our review of the record, however, the court did not admit the clip under section 16-10-201 but instead because defense counsel opened the door to it. We conclude that the court did not abuse its discretion by admitting the evidence on that basis.

## 1.   Additional Background

¶ 9      During direct examination, Fresno testified that the assailants told him to put his hands up and then started stabbing him. During cross-examination, defense counsel had Fresno listen to a four-minute clip from his thirty-minute interview with Detective Aulino, the lead investigator.  Defense counsel had Fresno use headphones so the jury could not hear the audio clip.  Counsel then asked, "At no point did you tell Detective Aulino that you had to hold your arms up?"  Fresno responded that he "didn't rehearse the story" but that "it's the same story every time, just some things don't get told in every story. . . .  I mean, the story is still the same thing."  Referencing the jury, Fresno then asked, "Are you going to play that out loud for them?"  Defense counsel again asked whether Fresno had heard himself say that he had to hold his hands up on the audio, and Fresno responded, "No, I did not mention it there."

¶ 10     During redirect examination, the prosecutor moved to admit and play the four-minute audio clip for the jury "under the rule of completeness" and section 16-10-201.  Defense counsel objected. The district court overruled the objection, reasoning that defense counsel had "raised the nature of the discussion enough that the

4

jury [wa]s entitled to [hear] this four or five-minute [audio]" and "whatever statement was made in context or not made in context."[2] The court later added, "[T]he issue of what [Fresno] didn't say to the detective *opened the door* for at least a couple of minutes of" the audio.  (Emphasis added.)

### 2. The District Court Did Not Err by Admitting the Audio Clip

¶ 11    Soriano contends that the district court erred by admitting the audio clip under section 16-10-201 because it did not contain a *statement* that was inconsistent with Soriano's trial testimony.  But, as noted, the court did not admit the audio clip as a prior inconsistent statement, even though the prosecutor cited section 16-10-201 when moving for its admission.  Instead, the court ruled that defense counsel had opened the door to the audio clip's admission.  We conclude that the court did not abuse its discretion by admitting the audio clip on that basis.  *See People v. Aarness*, 150 P.3d 1271, 1277 (Colo. 2006) (an appellate court may affirm a

---

[2] To the extent the court admitted the audio clip under CRE 106 or the "rule of completeness," Soriano does not challenge that part of the court's ruling.  *See People v. Archer*, 2022 COA 71, ¶ 42 (appellate court must affirm when a defendant does not challenge each alternative ground for admitting evidence).  But because the record is not clear on this point, we elect not to affirm on this basis.

trial court's ruling on any ground supported by the record); *see also*
*People v. Pernell*, 2014 COA 157, ¶ 36 (reversal was not required
when the evidence was admissible on an alternative basis), *aff'd on
other grounds*, 2018 CO 13.

¶ 12     "The concept of 'opening the door' represents an effort by
courts to prevent one party in a criminal trial from gaining and
maintaining an unfair advantage by the selective presentation of
facts that, without being elaborated or placed in context, create an
incorrect or misleading impression." *Golob v. People*, 180 P.3d
1006, 1012 (Colo. 2008) (citation omitted).  If one party opens the
door, the other party may introduce "otherwise inadmissible
rebuttal evidence," but "only to the extent necessary to remove any
unfair prejudice which might otherwise have ensued from the
original evidence." *People v. Cohen*, 2019 COA 38, ¶ 23 (quoting
*United States v. Martinez*, 988 F.2d 685, 702 (7th Cir. 1993)).

¶ 13     Defense counsel had Fresno listen to an audio clip the jury
could not hear and then asked him questions that were designed to
impeach his credibility.  Defense counsel pressed Fresno to admit
that he had not told the detective during the recorded interview that
the assailants told him to raise his hands.  The selective

presentation of that omission left the jury with a misleading impression that Fresno gave a different account of the assault than the one to which he was testifying and, as the People argue, "embellished the description he presented at trial."

¶ 14     In reality, the audio clip largely tracked Fresno's testimony, except for the detail about raising his hands. As the district court explained, given how the evidence was presented, the jury was entitled to "some context as to . . . when this statement was not made." *See Golob*, 180 P.3d at 1012; *cf. People v. Eppens*, 979 P.2d 14, 22 (Colo. 1999) (A victim's prior consistent statements were admissible for rehabilitation because a defendant "should not be permitted to 'have his cake and eat it too' by referring to select portions of [a victim's] prior statement in order to impeach [the victim], but leaving out large sections of the statement which demonstrate consistency." (citation omitted)).

¶ 15     The court admitted only four minutes of the thirty-minute interview, so the otherwise inadmissible rebuttal evidence was limited to only what was necessary to place in context the evidence elicited by defense counsel. *See Cohen*, ¶ 23; *see also Venalonzo v. People*, 2017 CO 9, ¶ 44 (the trial court did not err by admitting an

officer's otherwise inadmissible testimony when defense counsel opened the door on cross-examination, the officer's testimony on redirect only put the statements into context, and the testimony did not exceed the scope of cross-examination). The audio clip was also largely cumulative of Fresno's testimony — there was little new or controversial content in the short clip. *See People v. Warner*, 251 P.3d 556, 564 (Colo. App. 2010) ("Admission of cumulative evidence is a matter within the sound discretion of the trial court."); *cf. Eppens*, 979 P.2d at 23 (noting that a prior consistent statement properly admitted for rehabilitation "was merely repetitive of [the victim's] own testimony" and not "used to fill in significant gaps in the details of [the victim's] in-court testimony"). Additionally, both Fresno and the interviewing detective testified and were available to be cross-examined about the audio clip.

¶ 16 On this record, we perceive no abuse of discretion by the district court in allowing the prosecution to correct any misleading impression that defense counsel's questions created by playing the brief audio clip. *See Zapata*, ¶ 25; *Liggett*, ¶ 16.

¶ 17 Even so, Soriano contends that the probative value of the audio clip was substantially outweighed by the danger of

8

unfair prejudice under CRE 403 because it (1) bolstered Fresno's testimony and (2) contained speculative statements about the assailants' motive for taking Fresno's phone. Although defense counsel argued to the district court that the audio clip was "just bolstering [Fresno's] statements," they did not argue that it contained speculative statements or that it should be excluded under CRE 403. Regardless, we perceive no error.

¶ 18 CRE 403 strongly favors the admission of relevant evidence. *People v. Dist. Ct.*, 869 P.2d 1281, 1286 (Colo. 1994). Still, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." CRE 403. Unfair prejudice refers to "an undue tendency on the part of admissible evidence to suggest a decision made on an improper basis." *Dist. Ct.*, 869 P.2d at 1286.

¶ 19 Soriano argues that many statements in the audio clip were inadmissible under CRE 403 simply because they were bolstering. We acknowledge that out-of-court statements cannot be admitted solely to bolster a witness' trial testimony. *People v. Allgier*, 2018 COA 122, ¶ 44. But the concept of opening the door allows for the admission of *otherwise inadmissible* evidence, and bolstering

testimony is the type of evidence that can be admitted when the defense opens the door to it. *See People v. Renfro*, 117 P.3d 43, 46-47 (Colo. App. 2004) (concluding that the trial court did not abuse its discretion by admitting the bolstering testimony of a police officer when defense counsel opened the door on cross-examination); *People v. Davis*, 312 P.3d 193, 197 (Colo. App. 2010) (Bolstering testimony "is permitted where the defense opens the door by suggesting that a witness' statement cannot be substantiated."), *aff'd*, 2013 CO 57. Soriano does not explain how the bolstering effect of the statements created a danger of unfair prejudice that substantially outweighed their probative value for placing Fresno's alleged inconsistency by omission in context. *See* CRE 403.

¶ 20 We are similarly unpersuaded by Soriano's argument that the audio clip should have been excluded under CRE 403 because it contained speculative statements. At trial, Fresno testified that he had his phone and tried to call the police, but then the assailants took his phone. In the audio clip, Fresno told the detective, "They wanted my phone because, while I was like stumbling on my feet about to fall down, I said I was going to call the cops." Fresno drew

the same inference from the circumstances of the assault as any reasonable juror would have drawn from Fresno's trial testimony, and it was an appropriate inference for a lay person to draw. *See People v. Jones*, 907 P.2d 667, 668-69 (Colo. App. 1995) (Under CRE 701, "if the witness had sufficient opportunity to observe the person and to draw a rational conclusion about the person's state of mind," then "[a] lay witness may state an opinion about another person's motivation or intent.").

¶ 21 Fresno also testified at trial without objection that when the altercation began, Soriano and the other person "got in between me and between both of the cars. . . . [T]here was one to my every side. . . . So they were trying to pin me down." When describing the same moment in the audio clip, Fresno also said, "I'm guessing their plan was to get me right in between the cars so there's like very little visibility." We tend to agree that this statement had minimal probative value and was somewhat speculative — indeed, it begins with the words "I'm guessing." Still, Soriano fails to explain how this one statement made the four-minute audio clip so unfairly prejudicial as to be inadmissible under CRE 403.

¶ 22    Thus, we conclude that the district court did not abuse its discretion by not excluding the audio clip under CRE 403. *See Zapata*, ¶ 25; *Liggett*, ¶ 16.

### C.    The Police Officer's Testimony

¶ 23    Soriano contends that the district court erred by allowing a police officer to testify regarding how victims generally behave because it was not relevant under CRE 401 and was unfairly prejudicial under CRE 403. We perceive no reversible error.

¶ 24    To support his unfair prejudice argument, Soriano contends that the testimony was (1) expert testimony in the guise of lay testimony and (2) an improper opinion on witness credibility. These latter two arguments are unpreserved and subject to plain error review. *See Hagos v. People*, 2012 CO 63, ¶ 14 (we review unpreserved contentions for plain error). Although defense counsel raised CRE 403 at trial, they did not argue that the testimony was improper lay opinion or commentary on credibility. Instead, defense counsel said, "I think it's confusing and I think it's prejudicial." We reject Soriano's attempt to shoehorn these new arguments into his counsel's generic CRE 403 objection. *See Martinez v. People*, 2015 CO 16, ¶ 14 (To preserve an issue, a party

12

must make an objection "specific enough to draw the trial court's attention to the asserted error.").

### 1.    Additional Background

¶ 25    The jury submitted two questions to Officer Brock Lofgren, one of the first responders.  The district court overruled defense counsel's relevance and CRE 403 objections to the questions.  It then asked Officer Lofgren, "From your professional experience or training, how common is it for a victim to respond 'I don't know' when asked to recall people or events, including their assailant, immediately following an assault?"  Officer Lofgren responded, "In my experience, extremely common.  A lot of times, they haven't decided whether they want the person to be in trouble or not[,] or they just are in shock still and can't remember a lot of what just happened."  The court next asked, "Is it typical they are later able to recall the events or assailants from the assault with certainty?"  The court clarified, "Only if you have a basis of knowledge based on your experience can you answer that question."  Officer Lofgren responded, "Yes.  Obviously, I'm not an expert on psychology, but I know from my own experiences and the experience of other victims

I've talked to, a lot of times after a traumatic incident you remember a lot shortly after[,] when at the time couldn't recall anything."

### 2. Relevance

¶ 26 As best we understand, Soriano contends that Officer Lofgren's testimony was not relevant because it was too general and "tantamount to victim impact evidence." We disagree.

¶ 27 Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401. Officer Lofgren's testimony was relevant to explain why Fresno did not, or was unable to, identify Soriano immediately after the attack even though Fresno knew Soriano and definitively identified him as the assailant later. The identity of the assailant was a material fact, and the officer's testimony made Fresno's identification of Soriano as the assailant more probable than without it. *See id.*; *People v. Garcia*, 179 P.3d 250, 254 (Colo. App. 2007) (Evidence must be material and relevant to be admissible; material evidence "must relate to a 'fact that is of consequence to the determination of the action.'" (citation omitted)). And the evidence was relevant even though Officer Lofgren did not

say that Fresno's behavior was consistent with the behavior he had described because the jury could draw that conclusion for itself.

¶ 28 We are not persuaded by Soriano's argument that the officer's testimony was irrelevant victim impact evidence. True, victim impact evidence that shows only "the effect of a crime on a [victim or the] victim's family often has no tendency to prove whether a particular defendant committed a particular criminal act against a particular victim." *People v. Martinez*, 2020 COA 141, ¶ 33 (quoting *State v. Graham*, 650 S.E.2d 639, 645 (N.C. Ct. App. 2007)). But victim impact evidence may be relevant to determine "whether the defendant committed the crime for which [they were] charged" and may be admissible to show "the context or circumstances of the crime itself." *Id.* at ¶¶ 33-34 (citation omitted). Even if we assume that Officer Lofgren's testimony included victim impact evidence, even though it was not specific to the victim in this case, it was still relevant because it helped explain why Fresno might not have been able to identify Soriano right away. *See id.*

### 3.    Expert Testimony

¶ 29    Soriano next contends that Officer Lofgren's testimony was expert testimony erroneously admitted in the guise of lay testimony. We conclude that any error was not plain.

¶ 30    "[T]he critical factor in distinguishing between lay and expert testimony is the basis for the witness's opinion."  *Venalonzo,* ¶ 22. We "must consider whether the testimony could be based on an ordinary person's experience or knowledge."  *People v. Murphy,* 2021 CO 22, ¶ 21.  If so, it is proper lay opinion testimony if it meets the requirements of CRE 701.  *See id.* at ¶¶ 17, 20.  But if a "witness provides testimony that could not be offered without specialized experiences, knowledge, or training, then the witness is offering expert testimony" under CRE 702.  *Venalonzo,* ¶ 2.

¶ 31    "Police officers regularly, and appropriately, offer testimony under CRE 701 based on their perceptions and experiences."  *People v. Tallwhiteman,* 124 P.3d 827, 832 (Colo. App. 2005); *accord Murphy,* ¶ 21.  But an officer's testimony "becomes objectionable when what is essentially expert testimony is improperly admitted under the guise of lay opinions."  *People v. Stewart,* 55 P.3d 107, 123 (Colo. 2002).

16

¶ 32     As a threshold matter, we agree with Soriano that Officer Lofgren's testimony was expert testimony. The juror questions sought answers based on Officer Lofgren's "professional experience or training," the court told Officer Lofgren he could only answer the second question if he had the requisite "experience," and Officer Lofgren phrased his answers in terms of his experience as a police officer working with assault victims. More importantly, how often assault victims are unable to immediately identify their assailants yet later recall them with reasonable certainty is knowledge "beyond the realm of common experience." *Venalonzo*, ¶ 22. Although police officers may offer lay testimony based on their own perceptions and observations, *Murphy*, ¶ 21, Officer Lofgren's testimony was not based on "an ordinary person's experiences or knowledge," *Venalonzo*, ¶ 23. Thus, we conclude that Officer Lofgren's testimony was expert testimony and that the court erred by admitting it as lay testimony.

¶ 33     Even so, we conclude that any error in admitting the officer's testimony was not plain. Plain error is error that is both obvious and substantial, such that it "undermined the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the

17

judgment of conviction." *Hagos*, ¶ 14 (citation omitted).  Assuming, without deciding, that Officer Lofgren's testimony was obviously expert testimony, we nonetheless conclude that any error in admitting it was not substantial.

¶ 34    Officer Lofgren testified that he had been a patrol officer since 2014, primarily responded to service calls, and could respond "from [his] own experiences and the experience of other victims [he had] talked to."  Because the officer likely would have been qualified to testify as an expert had he been offered as one, any error in admitting his answers to the jurors' questions did not undermine the fundamental fairness of the proceeding.  *See id.*; *People v. Conyac*, 2014 COA 8M, ¶¶ 66-67 (assuming, without deciding, that the trial court improperly allowed an officer to give expert testimony but concluding there was no plain error when "the officer was qualified to offer such expert testimony given his training and experience"); *People v. Malloy*, 178 P.3d 1283, 1288 (Colo. App. 2008) (concluding, without deciding whether an officer's testimony was lay or expert, that there was no plain error because the officer was amply qualified based on his training and experience).  Moreover, Fresno separately testified corroboratively that he was

18

unable to identify Soriano immediately after the stabbing because he was scared, severely wounded, and "fighting for [his] life," which is a commonsense reaction within the purview of a lay witness. *See Stewart*, 55 P.3d at 124-25 (officer's improperly admitted expert testimony was harmless in part because it was corroborated by other testimony); *People v. McFee*, 2016 COA 97, ¶ 90 ("When evidence is merely cumulative, any error in its admission is harmless."). The testimony was also brief and not mentioned again. Thus, we perceive no plain error. *See Hagos*, ¶ 14.

### 4.    Opinion on Witness Credibility

¶ 35    Soriano next contends that Officer Lofgren's testimony was an improper opinion on Fresno's credibility. We disagree.

¶ 36    In Colorado, one witness may not opine on the veracity of another witness. *Murphy*, ¶ 36; *Davis v. People*, 2013 CO 57, ¶ 15. However, an expert may testify about the typical behavior of victims if it helps the jury understand a victim's counterintuitive behavior. *People v. Relaford*, 2016 COA 99, ¶ 28; *see also People v. Glasser*, 293 P.3d 68, 78 (Colo. App. 2011) ("[E]xperts may testify concerning whether a victim's behavior or demeanor is consistent with the typical behavior of victims of abuse."); *People v. Whitman*, 205 P.3d

371, 383 (Colo. App. 2007) (expert testimony about general characteristics and behaviors was not testimony about the veracity of the witness). "While such 'testimony may incidentally give rise to an inference that a victim is or is not telling the truth about the specific incident,' 'this fact alone is insufficient to deny admission of the evidence, because expert testimony generally tends to bolster or attack the credibility of another witness.'" *Relaford*, ¶ 30 (quoting *People v. Koon*, 724 P.2d 1367, 1370 (Colo. App. 1986)).

¶ 37    Officer Lofgren's testimony helped the jury understand why victims may not immediately identify an assailant but are likely to recall specific details later, behavior that may otherwise seem puzzling. *See id.* at ¶ 28. That his testimony incidentally allowed the jury to infer that Fresno was telling the truth did not make the testimony inadmissible. *See id.* at ¶ 30. Officer Lofgren did not even say that Fresno's behavior was consistent with the general victim behavior he had described. Thus, we conclude that Officer Lofgren did not improperly opine on Fresno's veracity.

### 5.    CRE 403

¶ 38    Lastly, Soriano contends that Officer Lofgren's testimony was inadmissible under CRE 403 because its probative value was

substantially outweighed by the danger of unfair prejudice or misleading the jury. We disagree.

¶ 39 Relevant evidence may be excluded if its probative value is substantially outweighed by, among other things, the danger of unfair prejudice or misleading the jury. CRE 403. When reviewing a district court's exercise of discretion in performing the balancing required by CRE 403, we afford "the evidence the maximum probative value attributable by a reasonable fact finder and the minimum unfair prejudice to be reasonably expected." *People v. Gibbens*, 905 P.2d 604, 607 (Colo. 1995).

¶ 40 Soriano argues that the probative value of the officer's testimony was minimal because it addressed victims of assault generally rather than Fresno specifically. But for that same reason, the risk of unfair prejudice was also minimal. As noted, Officer Lofgren was qualified to answer questions about how victims behave, and he did not give an improper opinion on Fresno's credibility. Soriano does not otherwise explain how the evidence was *unfairly* prejudicial, *see Dist. Ct.*, 869 P.2d at 1286, or misleading. Thus, we conclude that the district court did not abuse

its discretion by striking the CRE 403 balance in favor of allowing Officer Lofgren to answer the jury's questions.  *See id.*

### III.    Sentencing

¶ 41    Soriano contends that the district court erred by sentencing him consecutively for attempted first degree murder and aggravated robbery.  We disagree.

### A.    Standard of Review and Applicable Law

¶ 42    "We review the trial court's decision to impose consecutive sentences for an abuse of discretion."  *Chirinos-Raudales v. People*, 2023 CO 33, ¶ 23.  A court abuses its discretion if it misapplies the law or if its ruling is manifestly arbitrary, unreasonable, or unfair. *Id.*  A trial court generally has "the discretion to impose either concurrent or consecutive sentences," but that discretion may be limited by statute.  *Juhl v. People*, 172 P.3d 896, 899 (Colo. 2007).

¶ 43    As relevant here, section 18-1.3-406(1)(b), C.R.S. 2025,[3] mandates consecutive sentences for "a person convicted of two or more separate crimes of violence arising out of the same

---

[3] Section 18-1.3-406, C.R.S. 2025, was amended in 2023 to move the quoted language from subsection (1)(a) to (1)(b).  *See* Ch. 297, sec. 1, § 18-1.3-406(1)(a)-(b), 2023 Colo. Sess. Laws 1778-79.  The amendment did not substantively alter this language.

incident." But section 18-1-408(2)-(3), C.R.S. 2025, mandates concurrent sentences for multiple convictions that are "based on the same act or series of acts arising from the same criminal episode" and "supported by identical evidence." *See also Schneider v. People*, 2016 CO 70, ¶ 22 ("[T]he phrase 'arising out of the same incident' in section 18-1.3-406 was not intended to convey any meaning different from 'arising from the same criminal episode' in section 18–1–408.").

¶ 44 A trial court is required to impose concurrent sentences under section 18-1-408 "only if the evidence supports no other conclusion than that the charges are based on identical evidence." *Thompson v. People*, 2020 CO 72, ¶ 61 (quoting *People v. Muckle*, 107 P.3d 380, 383 (Colo. 2005)). In other words, "the mere possibility that identical evidence may support two convictions is not sufficient" to require concurrent sentences. *Juhl*, 172 P.3d at 900.

¶ 45 To determine whether convictions are based on identical evidence, courts look at "whether the charges result from the same act, so that the evidence of the act is identical, or from two or more acts fairly considered to be separate acts, so that the evidence is different." *Id.* at 902. When one criminal charge is "logically

23

separated" from the act that forms the basis of another charge, the evidence is not identical. *Id.*

### B. The District Court Did Not Err by Sentencing Soriano to Consecutive Sentences

¶ 46 Soriano contends that the district court erred by sentencing him consecutively because (1) it misapplied the law by focusing on the elements of the charged offenses rather than the evidence supporting each conviction, and (2) the evidence does not support a finding that the convictions were based on sufficiently separate acts. We are not persuaded.

¶ 47 As to Soriano's first contention, the district court found "that the aggravated robbery evidence [was] different from the first degree attempted murder evidence in that the taking of the phone and the wallet [wa]s additional evidence that d[id] not play any part in the consideration of attempted murder in the first degree." Based on this articulated rationale, the court did not focus on the *elements* of attempted first degree murder or aggravated robbery but instead considered the *evidence* supporting each conviction, reasoning that there were distinct acts underlying the convictions. Thus, we

24

conclude that the court did not misapply the law as Soriano argues. *See Chirinos-Raudales*, ¶ 23.

¶ 48    We further conclude that the court did not err by determining that the attempted first degree murder and aggravated robbery were not based on identical evidence. It is undisputed that the stabbing and the taking of Fresno's cell phone were two distinct acts. And "[t]he mere fact that the offenses took place during one continuous criminal episode does not establish that they were supported by identical evidence." *People v. Jurado*, 30 P.3d 769, 773 (Colo. App. 2001). Instead, the evidence that the assailants attempted to murder Fresno by stabbing him is distinct from the evidence that the assailants robbed him by threatening him and taking away his phone. *See Muckle*, 107 P.3d at 383 (the defendant's convictions for manslaughter and first degree assault were sufficiently separate when the defendant's first shot hit the victim in the abdomen and the second shot hit the back of the victims' arm while he was moving away); *Qureshi v. Dist. Ct.*, 727 P.2d 45, 46-47 (Colo. 1986) (the defendant's convictions for first degree assault and attempted manslaughter were sufficiently separate when the defendant

25

attacked the victim by stabbing her in the abdomen in the kitchen and then attempting to stab her in the throat in the bathroom).

¶ 49    We are not persuaded otherwise by Soriano's argument that these distinct acts were not "separated by time and place." *Juhl*, 172 P.3d at 901.  Colorado case law is not particularly clear about what it means for acts to be "separated by time and place." *Id.*  The parties do not cite, and we are not aware of, any reported decision defining the requirement beyond its plain language.  And we find it difficult to discern a principled distinction between how courts have applied the requirement that would help animate the phrase.

¶ 50    For example, in *People v. O'Shaughnessy*, a division of this court concluded that the trial court erred by imposing consecutive sentences for attempted murder, attempted aggravated robbery, and second degree assault.  275 P.3d 687, 697 (Colo. App. 2010), *aff'd on other grounds*, 2012 CO 9.  In that case, the defendant approached the victim with a knife as she finished loading groceries into her van and told her to get inside.  *Id.* at 690.  The victim sat in the driver's seat but turned to kick the defendant as he began stabbing her with the knife.  *Id.*  The defendant then demanded money, the victim said she had none and turned for her purse, and

the defendant left. *Id.* In reversing the consecutive sentences, the division reasoned that "all three offenses were based on identical evidence and occurred in a single criminal episode lasting less than sixty seconds." *Id.* at 697.

¶ 51    In contrast, in *People v. Bass*, a division of this court affirmed the trial court's decision to impose consecutive sentences for attempted robbery of an at-risk person and use of a stun gun. 155 P.3d 547, 554 (Colo. App. 2006). In that case, the defendant approached the seventy-seven-year-old victim from behind as she neared her car in a mall parking lot, spun her around, and used a stun gun on her stomach. *Id.* at 550. The defendant then pushed the victim to the ground and used the stun gun on her back while attempting to steal her purse. *Id.* After failing to remove the purse from the victim's arm, the defendant fled in a waiting car. *Id.*

¶ 52    In affirming the consecutive sentences, the division reasoned that evidence of the defendant pushing the victim to the ground was sufficient to prove the attempted robbery; "[c]onsequently, any additional evidence presented regarding the stun gun use could have been used by the jury as evidence of [the defendant's] continued attempts to steal the purse and, thus, could constitute a

separate criminal offense." *Id.* at 554. The division concluded that "the acts were sufficiently distinguishable from each other so as to form the basis of the two counts." *Id.*

¶ 53    Neither *O'Shaughnessy* nor *Bass* analyzed whether the distinct acts supporting the defendants' multiple convictions were separated by time and place. And despite the parties' attempts to distinguish them, we see little daylight between these two cases that would justify their opposite results.

¶ 54    When the acts underlying separate charges are the same type of act — for example, two shots fired from a gun or two stabs with a knife — it makes sense to require that the acts not only be distinct but *also* be separated by time and place to sustain consecutive sentences. But here, the stabbing can be "logically separated" from the taking of a cell phone, *Juhl*, 172 P.3d at 902, so the evidence supporting each charge is not identical, notwithstanding that the acts took place during a single criminal episode, *see Jurado*, 30 P.3d at 773. *See Muckle*, 107 P.3d at 383; *Qureshi*, 727 P.2d at 46-47; *cf. Juhl*, 172 P.3d at 902 ("Unlike the cases we have previously addressed regarding identical evidence, where there were two shots fired at different times or where two attacks occurred in

28

different places, the act that was the basis of [the defendant]'s first degree assault conviction cannot be logically separated from the act that formed the basis of the vehicular assault conviction.").

¶ 55     The record also supports a conclusion that the stabbing was complete before the assailants took Fresno's cell phone such that the acts were "separated by time and place." *Juhl*, 172 P.3d at 901. Fresno testified that after the assailants surrounded him, Soriano took out a knife and stabbed him. At some point, Fresno tried to call the police. He said that his face had been slashed and "blood was gushing," so he could not see, but he heard the assailants say they were going to "pop" him if he did not give up his phone. He said the assailants took his phone from his hand.

¶ 56     In the admitted audio clip of his interview with Detective Aulino, Fresno explained that "after [he] got stabbed," he was "stumbling on [his] feet about to fall down" and said he was going to call the police. The assailants screamed, "Give me your phone." Fresno said he was in shock but tried to grab his phone, and the assailants said, "Hurry up before I pop you." Fresno gave the assailants his phone "because [he] didn't want to get stabbed anymore."

¶ 57 Notably, Fresno did not testify that Soriano stabbed him while taking away his phone or to facilitate taking away his phone. And there is no evidence that Soriano stabbed Fresno again once Fresno pulled out his phone or afterward when Fresno was stumbling or had fallen to the ground. From this record, it is reasonable to infer that the attempted first degree murder was over before the aggravated robbery began. And if such an inference is possible, concurrent sentences are not required. *See Thompson,* ¶ 63 (only when the evidence "supports no other conclusion" than that the convictions are based on identical evidence are concurrent sentences required); *Juhl,* 172 P. 3d 900 (the "mere possibility" that the convictions are based on identical evidence is not enough to require concurrent sentences).

¶ 58 Accordingly, we conclude that the district court did not err by imposing consecutive sentences. *See Chirinos-Raudales,* ¶ 23.

IV.   Disposition

¶ 59 We affirm Soriano's judgment of conviction and sentences.

JUDGE DUNN and JUDGE SCHOCK concur.

30